REISNER, P.J.A.D.
*263 Under N.J.R.E. 609, there are different standards for admissibility of a prior criminal conviction for impeachment purposes, depending on whether "more than ten years have passed" since *264 the defendant's[1] conviction "or release from confinement for it, whichever is later." N.J.R.E. 609(b)(1). In this appeal, we decide whether the time period during which a defendant has been civilly committed pursuant to the Sexually Violent Predator Act (SVPA), N.J.S.A. 30:4-27.24 to -27.38, must be included in determining the ten-year time period.
We hold that because civil commitment is not confinement "for" the crime of which a defendant was convicted, the period of civil commitment must be included in determining the ten-year time period.[2] The trial court erred in holding that, for purposes of N.J.R.E. 609(b), defendant's conviction was not remote because of his continued confinement to the Special Treatment Unit (STU) pursuant to the SVPA. The trial court also mistakenly applied discretion in holding, in the alternative, that if the conviction was remote under N.J.R.E. 609(b)(1), the State carried its burden of proving admissibility. Due to the judge's erroneous ruling, defendant decided not to testify at his trial. Because defendant was unfairly prevented from testifying, and the jury might have reached a different result had defendant testified, we reverse the conviction and remand the case for retrial.
*1203 I
Defendant R.J.M.[3] was previously convicted of first-degree sexual assault, for which he was sentenced on May 4, 1990. In 2000, after defendant completed his sentence for that criminal conviction, the State successfully applied to have him civilly committed under the SVPA. In 2014, while he was a resident at the STU, defendant was accused of making threats against one of the *265 corrections officers who staffed the STU, resisting efforts by other corrections officers to subdue him, and assaulting several officers. Defendant was indicted and tried for third-degree terroristic threats, N.J.S.A. 2C:12-3(a), third-degree resisting arrest, N.J.S.A. 2C:29-2(a)(3)(a), fourth-degree obstructing the administration of law, N.J.S.A. 2C:29-1(b), and fourth-degree aggravated assault, N.J.S.A. 2C:12-1(b)(5)(h).
Defendant's trial took place in March 2016-almost twenty-six years after his 1990 conviction, and sixteen years after his 2000 release from prison. Prior to the trial, the State applied for a Sands [4] hearing, seeking permission to impeach defendant with the 1990 conviction if he testified. The State argued that defendant's civil commitment should be treated as "confinement," within the meaning of N.J.R.E. 609(b), and thus ten years had not elapsed since the end of his confinement for his 1990 conviction. The trial court accepted that construction of N.J.R.E. 609(b). In an alternate analysis, the trial court reasoned that, even if the conviction was remote, the seriousness of the crime outweighed other factors that favored preclusion. See N.J.R.E. 609(b)(2) (listing factors the court may consider in deciding admissibility).
We need not discuss the trial evidence in detail. Corrections Officer Francis testified that defendant hurled threats and obscene insults at her, and tried to incite other STU residents to take his side. She thought she was facing an incipient riot. She sprayed defendant with pepper spray, and called for back-up assistance, after he made what she considered a threatening gesture. The back-up officers testified that after defendant retreated to his room, they entered in order to bring him to the shower room and wash off the pepper spray. They testified that defendant violently resisted their efforts to put him in handcuffs, and in the ensuing struggle, he was injured when he hit his head on a bed frame.
*266 Defendant declined to testify, because he did not want to face impeachment with his prior conviction. Defendant's version of the incident-presented through witness cross-examination and his attorney's arguments to the jury-was that he made some offensive comments but no verbal or physical threats. Defendant contended that Francis was offended by his insults, and she and her fellow officers pepper-sprayed him and beat him up as payback.
The trial court dismissed the resisting arrest charge at the close of the State's case. The jury acquitted defendant of aggravated assault, but convicted him of terroristic threats and obstruction. Defendant appeals from his conviction, raising one issue:
THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY ALLOWING THE STATE TO USE DEFENDANT'S REMOTE 19[90] CONVICTION FOR AGGRAVATED SEXUAL ASSAULT TO IMPEACH DEFENDANT'S CREDIBILITY IF HE TESTIFIED. DEFENDANT'S CIVIL COMMITMENT TO THE SPECIAL TREATMENT UNIT (STU) PURSUANT
*1204 TO THE SEXUALLY VIOLENT PREDATOR ACT (SVPA) WAS NOT "CONFINEMENT FOR [THE CONVICTION]" WITHIN THE MEANING OF N.J.R.E. 609(B)(1).
II
Ordinarily we review a trial court's evidentiary rulings for abuse of discretion. State v. T.J.M., 220 N.J. 220, 233-34, 105 A.3d 1071 (2015). However, we do not defer to a ruling that is based on a mistaken interpretation of an evidence rule, or that misapplies the rule. See State v. Rose, 206 N.J. 141, 158, 19 A.3d 985 (2011) ; State v. Lykes, 192 N.J. 519, 534, 933 A.2d 1274 (2007) ; State v. Reddish, 181 N.J. 553, 608-09, 859 A.2d 1173 (2004).
Pursuant to N.J.R.E. 609(a), a defendant's prior criminal conviction is admissible for impeachment purposes, unless the defense establishes, pursuant to N.J.R.E. 403, that its admission will be substantially more prejudicial than probative. See N.J.R.E. 403 ; T.J.M., 220 N.J. at 233, 105 A.3d 1071 ; State v. Kelly, 97 N.J. 178, 217 n. 21, 478 A.2d 364 (1984). However, N.J.R.E. 609(b)(1) creates a presumption that a conviction more remote than ten years is inadmissible for impeachment purposes, unless the State carries the burden of proving "that its probative value outweighs its *267 prejudicial effect." The ten-year period runs from the date of conviction or defendant's release from confinement "for it":
If, on the date the trial begins, more than ten years have passed since the witness's conviction for a crime or release from confinement for it, whichever is later, then evidence of the conviction is admissible only if the court determines that its probative value outweighs its prejudicial effect, with the proponent of that evidence having the burden of proof.
[ N.J.R.E. 609(b)(1) (emphasis added).]
"We interpret an evidence rule, as we would a statute, by first looking at its plain language." State ex rel. J.A., 195 N.J. 324, 338, 949 A.2d 790 (2008). We give "the terms used ... their ordinary and accepted meaning," State v. Shelley, 205 N.J. 320, 323, 15 A.3d 818 (2011), and we construe the words in the context in which they appear. N.J.S.A. 1:1-1 ; State v. Regis, 208 N.J. 439, 447, 32 A.3d 1109 (2011). Viewed in context, the words "for it" logically refer to confinement for the crime for which a defendant was convicted.
However, on this appeal, as in the trial court, the State focuses on the term "confinement," which it argues is broader than the terms imprisonment or incarceration and should be construed to include civil commitment. We cannot agree. The pertinent language in the rule is not simply "confinement," but rather, "confinement for it," where "it" refers to the "conviction for a crime." N.J.R.E. 609(b)(1) (emphasis added). Defining "confinement" in a vacuum, as the State urges, rather than reading it in context, produces an overbroad reading at odds with the statute's plain language.
The State also argues that because the 1990 conviction served as the predicate act for defendant's civil commitment under the SVPA, his commitment was "a direct result of that conviction." That argument flies in the face of case law construing the SVPA, and the constitutional limits under which civil commitment is permissible.
A conviction for an underlying sexual offense is not the only permissible predicate for civil commitment, and by itself is not sufficient evidence to justify commitment.
*1205 See *268 N.J.S.A. 30:4-27.26.[5] Although defendant's prior conviction satisfied one of the predicate elements leading to his confinement under the SVPA, he was not committed for the conviction. As our Supreme Court has recognized in another context:
[C]ommitment pursuant to the [SVPA] is not a direct consequence of pleading guilty to a predicate sexual offense because commitment does not automatically flow from the conviction .... [A] person may be convicted of a predicate sex offense, and yet not be committed under the Act because the evidence is not sufficient to find that his or her present mental condition creates a likelihood of future sexually violent behavior.
[ State v. Bellamy, 178 N.J. 127, 138, 835 A.2d 1231 (2003) (emphasis added).]
Moreover, basing civil commitment on a prior conviction, without proof of a defendant's current dangerousness due to a serious mental disorder, would be unconstitutional. See Kansas v. Crane, 534 U.S. 407, 411-13, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002) ; In re Commitment of W.Z., 173 N.J. 109, 128-29, 801 A.2d 205 (2002).
In light of the rule's plain language, and applicable precedent construing the SVPA, a civil commitment under the SVPA is not confinement "for" the conviction serving as the SVPA predicate offense.
The State argues that N.J.R.E. 609(b) excludes remote convictions in order to avoid unfair prejudice to defendants who have voluntarily lived law-abiding lives for a substantial period of time since their prior convictions. The State contends that the term "confinement" should include civil commitment because, like imprisonment, commitment to the STU prevents a defendant from committing new crimes. We reject that argument.
Determining "[t]he Legislature's intent is the paramount goal when interpreting a statute and, generally, the best indicator *269 of that intent is the statutory language." DiProspero v. Penn, 183 N.J. 477, 492, 874 A.2d 1039 (2005). Where the meaning is evident from the plain language, we need not look further in interpreting the rule. State v. Rangel, 213 N.J. 500, 509, 64 A.3d 558 (2013) ("If giving an enactment's words their commonsense and ordinary meaning reveals legislative intent, our mission is complete."); DiProspero, 183 N.J. at 492, 874 A.2d 1039. In this case, N.J.R.E. 609(b)(1) is not ambiguous and we decline to give it a broader construction than its plain language will support.[6] Taken in context, "confined" clearly refers to the custodial portion of a defendant's criminal sentence, and is not a more general reference to any deprivation of physical liberty. See State v. Lee, 60 N.J. 53, 58, 286 A.2d 52 (1972).
Defendant's confinement for his 1990 conviction terminated in 2000, almost sixteen years before his trial. Therefore, the trial court mistakenly applied discretion in holding that the conviction was admissible under N.J.R.E. 609(a).
*1206 In its alternate analysis, the trial court also erred in applying the standards for admissibility of a remote conviction under N.J.R.E. 609(b). Evidence of a remote conviction is only admissible if "its probative value outweighs its prejudicial effect, with the proponent of that evidence having the burden of proof." N.J.R.E. 609(b)(1). In making that determination, the court "may consider" four listed factors. N.J.R.E. 609(b)(2).
(i) whether there are intervening convictions for crimes or offenses, and if so, the number, nature, and seriousness of those crimes or offenses,
(ii) whether the conviction involved a crime of dishonesty, lack of veracity or fraud,
(iii) how remote the conviction is in time,
(iv) the seriousness of the crime.
[ N.J.R.E. 609(b)(2)(i) to (iv).]
*270 However, making findings as to those four factors is not enough. The court must then engage in the weighing process under (b)(1), to determine whether the State has carried its burden of proving that evidence of the remote conviction would not be more prejudicial than probative. N.J.R.E. 609(b)(1). Here, the trial court gave controlling weight to the seriousness of the crime-although none of the other factors applied-and did not analyze the prejudice versus the probative value of this remote conviction. The court also mistakenly relied on State v. Paige, 256 N.J. Super. 362, 607 A.2d 164 (App. Div. 1992), in the analysis. Paige predated the adoption of N.J.R.E. 609(b), and turned in part on defendant having the burden of proving that his remote murder conviction should be excluded. Id. at 373, 607 A.2d 164.
In the context of this case, defendant was already facing unavoidable prejudice from the jury's knowledge that he was in a facility run by the Department of Corrections and staffed by corrections officers. The prior conviction was very remote, and although it was the product of a repulsive crime, it did not reflect on defendant's honesty or veracity, but rather on his sexual compulsion. On these facts, we conclude that the State did not carry its proof burden, and the trial court's ruling was a mistaken exercise of discretion.
III
Based on our review of the trial record, including the video footage of the STU security cameras, we cannot conclude that the trial court's erroneous evidentiary ruling was harmless. The case hinged on the jury's evaluation of witness credibility. The testimony of the State's witnesses was contradictory in some respects, and the security videos do not entirely support their version of events. The jurors evidently did not credit all of their testimony, because they acquitted defendant of the assault charge.
Defendant understandably declined to testify in light of the court's ruling that if he did so, the State could impeach him with his prior first-degree conviction. Had defendant testified, the jury *271 may have acquitted him of additional charges. Because the State's evidence cannot fairly be described as overwhelming, and defendant's testimony might have influenced the outcome, the error had a clear capacity to produce an unjust result. See R. 2:10-2; State v. Scott, 229 N.J. 469, 483-84, 163 A.3d 325 (2017) ; State v. Murphy, 412 N.J. Super. 553, 561, 991 A.2d 872 (App. Div. 2010). Accordingly, we are constrained to reverse defendant's conviction and remand the case for retrial.
Reversed and remanded. We do not retain jurisdiction.

We use "defendant," because this is a criminal case. By its terms, however, N.J.R.E. 609 applies to "any witness." N.J.R.E. 609(a)(1).

We use the term "remote" to refer to a conviction that is more than ten years old within the meaning of N.J.R.E. 609(b)(1).

Because defendant is civilly committed, we use initials to protect his privacy.

State v. Sands, 76 N.J. 127, 386 A.2d 378 (1978).

Pursuant to N.J.S.A. 30:4-27.26, a "sexually violent predator" is "a person who has been convicted, adjudicated delinquent or found not guilty by reason of insanity for commission of a sexually violent offense, or has been charged with a sexually violent offense but found to be incompetent to stand trial." Additionally, the person must "suffer[ ] from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for control, care and treatment." Ibid.

The State's argument proves too much. If we untether the term "confinement" to the words "for it," the State's argument would support excluding all periods of time during which a defendant was physically confined for any reason, including any mental illness or physical injury.