> **NOT FOR PUBLICATION WITHOUT THE**
> **APPROVAL OF THE APPELLATE DIVISION**
>
> This opinion shall not "constitute precedent or be binding upon any court."
> Although it is posted on the internet, this opinion is binding only on the
> parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3238-17T3

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

CHRISTOPHER G. ORSINI,

    Defendant-Respondent.

_____

> Submitted May 21, 2018 – Decided August 24, 2018
>
> Before Judges Messano and Accurso.
>
> On appeal from Superior Court of New Jersey,
> Law Division, Hudson County, Indictment No.
> 17-07-0488.
>
> Esther Suarez, Hudson County Prosecutor,
> attorney for appellant (Erin M. Campbell,
> Assistant Prosecutor, on the brief).
>
> Condon & Theurer, attorneys for respondent
> (Kathleen M. Theurer, on the brief).

PER CURIAM

    The State appeals on our leave from a March 12, 2018 order

denying its motion to admit the recording of a 911 call and a

March 14 order granting defendant's motion to suppress a citizen video capturing a car theft.  We reverse.

The essential facts are easily summarized.  On a May morning last year, a teenager left her father's red Ford Focus running outside their home in Jersey City while she ran inside to retrieve something she had forgotten.  When she emerged moments later, she saw the car being driven down the street with her house keys, clothing and wallet inside.  The theft was captured on their neighbor's security camera, although the image is not sharp enough to identify the thief.  The next day, a woman made a panicky 911 call claiming she was following a man in a red Ford Focus, who had just punched her and stolen her wallet.

Defendant was apprehended shortly after the 911 call in the vicinity of where police located the car, about ten blocks from where the victim reported the robbery.  He was identified in a show-up by the 911 caller.  She claimed he was the man who reached into her car, punched her and stole her wallet while she waited for her daughter's school to let out, and then drove off in the red Ford Focus with her in pursuit.  Defendant was indicted on one count of third-degree receiving stolen property, the Ford Focus, and one count of second-degree robbery.

A-3238-17T3

Following a <u>Driver</u>[1] hearing, the court ruled both the video and the tape of the 911 call inadmissible. The court deemed the 911 call testimonial, finding the statements made by the caller "were not made in the course of an ongoing emergency" and that she never "requested any assistance to resolve an ongoing emergency." The court rejected the State's assertion that the call was admissible as a present sense impression under N.J.R.E. 803(c)(1), relying on <u>State ex rel. J.A.</u>, 195 N.J. 324, 346 (2008). Specifically, the court found:

> the call was placed what appears to be four minutes after the alleged robbery and the victim merely repeated the suspect's license plate number and the fact that she had been robbed. The victim never indicated that she was injured or in need of any medical assistance. This emergency that the State suggests was ongoing at the time of the call was only exacerbated by the victim's choice – chase the suspect.

The court noted the caller "can and will likely testify," and concluded admitting the 911 call "would constitute needless presentation of cumulative evidence not necessary or materially probative to establish whether the victim was, in fact, robbed" and thus that its "potential prejudice" substantially outweighed its probative value. The court also ruled the 911 tape was procedurally barred under <u>R.</u> 3:9-1(e), because the State only

---

[1] <u>State v. Driver</u>, 38 N.J. 255 (1962).

notified the court of its intent to use it after the plea cutoff date and a month before trial.

As to the video, the court described it as consisting of different clips or camera angles showing first an African-American man walking down the street in dark clothing and a knit cap; then a young woman apparently looking for something in the red Ford Focus, who gets out and walks away from the car out of the frame; next an African-American man, who may or may not be the same man as in the first clip, crossing the street, getting in the Ford Focus and immediately driving it away; and finally the young woman reappearing and "walk[ing] into the street looking around for the car."

Although acknowledging the video qualified for admission under Driver, the court questioned its probative value. The court noted the State would "still need . . . the person who . . . left the car running" to testify it was stolen, and identify items recovered in the car, which "would be the better evidence in this case." Further, the court noted defendant was not charged with stealing the car, only receiving stolen property, and "that the risk of confusion of these issues or misleading the jury are too great" and a limiting instruction inadequate to counter the potential prejudice. The court ultimately concluded it "just [did not] believe that under these

circumstances [the video's] probative value is sufficient given the potential prejudice as it would confuse the jury and certainly mislead it in term of the charges as they're presented here."

The State appeals, arguing no rule or case requires the State to pre-admit a 911 recording prior to trial, and that the recording is not testimonial and clearly admissible under J.A. The State further argues the surveillance video is likewise admissible, "bears directly" on one element of the State's proofs, and that it is for the State, and not the court, to decide what admissible evidence will best prove its case. We agree.

Although we generally defer to a trial court's evidentiary rulings, reviewing them only for abuse of discretion, "we do not defer to a ruling that is based on a mistaken interpretation of an evidence rule, or that misapplies the rule." State v. R.J.M., 453 N.J. Super. 261, 266 (App. Div. 2018). Our review of the trial court's application of the law to the facts, of course, is plenary. State v. Hubbard, 222 N.J. 249, 263 (2015).

911 calls made in the throes of an emergency are textbook examples of nontestimonial hearsay statements that do not implicate the Sixth Amendment's Confrontation Clause and are admissible in a criminal trial "subject to traditional

limitations upon hearsay evidence." Davis v. Washington, 547

U.S. 813, 821 (2006). In Davis, the Court refined its

formulation of the "testimonial statements" it deemed critical

for Sixth Amendment purposes in Crawford v. Washington, 541 U.S.

36, 53-54 (2004), holding that:

> [s]tatements are nontestimonial when made in
> the course of police interrogation under
> circumstances objectively indicating that
> the primary purpose of the interrogation is
> to enable police assistance to meet an
> ongoing emergency. They are testimonial
> when the circumstances objectively indicate
> that there is no such ongoing emergency, and
> that the primary purpose of the
> interrogation is to establish or prove past
> events potentially relevant to later
> criminal prosecution.
>
> [Davis, 547 U.S. at 822 (footnote omitted).]

Our own Supreme Court applied that definition in J.A., a

case involving the statement of an eyewitness to a robbery who

followed the perpetrators, much like the victim of the robbery

here. 195 N.J. at 337. While in pursuit of the robbers, the

eyewitness telephoned the police and provided a description of

the suspects, which was then broadcast over the police radio.

Id. at 330. Within two minutes of receiving that dispatch, an

officer found the witness and interviewed him about what he saw.

Ibid.

The Court found the eyewitness's statement to the officer, made several minutes after the witness left off his pursuit of the robbers, did not qualify as a present sense impression exception to the hearsay rule under N.J.R.E. 803(c)(1) because it was not "made while or immediately after the [witness] was perceiving the event." Id. at 337-40. The Court further found the witness's report to the officer "ran afoul of the Confrontation Clause" as a testimonial statement because "[t]here was no ongoing emergency — no immediate danger — implicating either the witness or the victim, both of whom were in the company of police officers" when the eyewitness made the statements the State sought to admit. Id. at 340, 348.

Importantly for our purposes, the Court contrasted the witness's statements to the dispatcher "relating . . . events as they were unfolding." Id. at 337. The Court noted those statements, which were not offered in evidence, "would have fit within the classic definition of a present sense impression." Ibid. Addressing whether such statements would be considered testimonial, the Court stated that "[h]ad the prosecution introduced the contemporaneous statements of the eyewitness to the 911 operator, assuming that he was relating the robbery in progress and pursuit, the Confrontation Clause analysis might well have been different." Id. at 348 n.13.

It is different here because the State is seeking to admit the victim's call to the 911 operator while she was pursuing her assailant, not the statements she subsequently made to the police detailing the crime. A review of the 911 call makes the point. The call begins, not with the victim identifying herself or explaining the emergency, but shouting out the license plate number for the red Ford Focus. We quote the start of the call:

> Caller: [license plate number]
>
> 911 Operator: Excuse me?
>
> Caller: [license plate number]
>
> 911 Operator: Hello?
>
> Caller: Hello? Can I get a cop please? I'm — I'm chasing a car, he tried to rob me. His driver's plate is [repeats the license plate number], and he — he has my stuff. And he just — he jumped in my car and he chased — he grabbed all my stuff.
>
> 911 Operator: Why are you chasing him?
>
> Caller: [indiscernible]
>
> 911 Operator: Hello? Ma'am, all you gave me was a plate, so I can't really help you. I can't send somebody [indiscernible] the plate. I need a[n] address.
>
> Caller: I'm — I'm — right now we're on, um, we're about to be on — on the Boulevard.
>
> 911 Operator: Ma'am, you're gonna have to stop. You're gonna have to stop. You're gonna have to stop what you're doing, so I

A-3238-17T3

can send you some help.  Who is — do you
know this person?

Caller:  I don't know him. [indiscernible]

911 Operator:  He jumped in your car and
stole stuff?

Caller:  Yes!  Yes.  Please, I know he'll —
we're on Bergen.  We're on Bergen.  He's
right on the [indiscernible] right now!

911 Operator:  He's on — in a bicycle or a
car?

Caller:  No, it's a car, red Ford Focus.
The driver's plate is [again repeats the
license plate number].  And it's a Ford —
red Ford Focus.

A review of the tape makes plain the caller was relaying

events as they were occurring, that is, her pursuit of the man

who robbed her, and those that had just happened, that is, the

robbery itself, and that she was seeking police assistance for

an ongoing emergency.  The caller was not safely in the company

of a police officer recounting recent events.  She is on the

phone to the 911 operator, crying and frantically trying to

obtain help.  That the victim may have chosen to "exacerbate"

the emergency by giving chase does not affect the analysis.

Applying N.J.R.E. 803(c)(1) and J.A. to these facts, we have no

hesitation in finding the victim's 911 call qualifies as a

present sense impression exception to the hearsay rule and is

nontestimonial under J.A.

We further reject that admission of the tape was procedurally barred by operation of R. 3:9-1(e). Although R. 3:9-1(e) references sound recordings, defendant made no objection to the authenticity of the recording of the 911 call, which the State turned over in discovery at the beginning of the case. We, accordingly, reject the court's finding that the State's failure to have made known its intention to admit the 911 call prior to plea cutoff barred its admission under R. 3:9-1(e). Defendant cites no case supporting such an interpretation of the rule, and our own research has not revealed one.

Turning briefly to the video, we acknowledge the State's point that in order to convict defendant of receiving stolen property pursuant to N.J.S.A. 2C:20-7, it must prove, among other things, that the red Ford Focus was actually stolen. See State v. Hodde, 181 N.J. 375, 384 (2004). The video makes that point in dramatic fashion.

The court was satisfied as to the video's admissibility under the Driver test but expressed confusion "in terms of the value of the evidence and . . . what it was being proffered to show." At another point, the court stated it did not think the video "necessarily is the best proffer for the evidence" presumably to prove defendant's receipt of the stolen Ford Focus.

A-3238-17T3

Although we ordinarily defer to the trial court's assessment of the undue prejudice of relevant evidence under N.J.R.E. 403, see State v. Nantambu, 221 N.J. 390, 402-03 (2015), our concern here is the court's apparent failure to recognize the probative value of the video to the State's proofs, and the State's discretion in choosing the admissible evidence it will present to the jury in carrying its burden to establish each element of every charge, see McLean v. Liberty Health Sys., 430 N.J. Super. 156, 169 (App. Div. 2013) (quoting Cardell, Inc. v. Piscatelli, 277 N.J. Super. 149, 155 (App. Div. 1994)).

There is certainly no question but that the video is relevant evidence under N.J.R.E. 401. It obviously has a tendency to prove the red Ford Focus was stolen, a fact of consequence in a prosecution for receipt of stolen property. See State v. Cole, 229 N.J. 430, 447-48 (2017). Although we can appreciate the court's concern about the risk of the jury concluding defendant was the man in the video, and thus that he stole the car, a simple limiting instruction that the State has not charged defendant with stealing the car and does not contend defendant is the man in the video should be sufficient to address the risk of any potential prejudice. See id. at 455-56 (discussing use of limiting instructions); see also Ocasio v.

Amtrak, 299 N.J. Super. 139, 159-60 (App. Div. 1997) (holding that total exclusion of evidence is error where prejudice can be minimized through limiting instructions or other means).  We cannot find such an instruction would be too complicated or confusing for the jury to follow.  See State v. Hockett, 443 N.J. Super. 605, 616 (App. Div. 2016).

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION