**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2556-19

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

MARVIN BASKER,

    Defendant-Appellant.

_____

Submitted March 24, 2021 – Decided May 24, 2021

Before Judges Sumners and Geiger.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 17-09-2586.

Joseph E. Krakora, Public Defender, attorney for appellant (Candace Caruthers, Assistant Deputy Public Defender, of counsel and on the briefs).

Theodore N. Stephens, II, Acting Essex County Prosecutor, attorney for respondent (Caroline C. Galda, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Tried by a jury in November 2018, defendant Marvin Basker was found guilty of three counts of third-degree terroristic threats, N.J.S.A. 2C:12-3(a), and two lesser-included counts of disorderly persons simple assault, N.J.S.A. 2C:12-1(a)(1) and -1(a)(3). He was sentenced to an aggregate ten-year prison term with a five-year parole disqualifier. He contends on appeal that his decision not to testify was due to the trial court's error in admitting into evidence his remote convictions from 1994 to 2003, contrary to N.J.R.E. 609(b)(1); thus, an unjust result occurred. We agree and reverse his convictions. Accordingly, we do not address his excessive sentence contentions.

I.

A grand jury indicted defendant with two counts of first-degree robbery, N.J.S.A. 2C:15-1; one count of second-degree robbery, N.J.S.A. 2C:15-1; three counts of third-degree terroristic threats, N.J.S.A. 2C:12-3(a); and three counts of third-degree criminal restraint, N.J.S.A. 2C:13-2(a) and -2(b). The charges arose out of a July 2017 incident that occurred at a neighborhood corner store in Newark, which we detail below.

A-2556-19

A.

On November 7, 2018, a week prior to trial, a <u>Sands/Brunson</u>[1] hearing was held to adjudicate the State's motion to admit defendant's prior convictions of third-degree theft and third-degree unlawful possession of a firearm in 1994; third-degree receipt of stolen property in 1994; second-degree eluding in 1998; second-degree robbery in 2000; third-degree controlled dangerous substance (CDS) possession with intent to distribute in 2002; first-degree robbery in 2003; and second-degree aggravated arson and second-degree conspiracy to commit aggravated arson in June 2007.

Defense counsel did not object to the admission of the convictions but contended the arson and robbery offenses should be sanitized. The court granted the State's motion, reasoning:

> [Defendant] has a substantial criminal history. And certainly[,] under our <u>State v. Sands</u>, not only the recent conviction, the most recent [being] 2007, which is within [ten] years of the commission of the date, his release from that -- he wouldn't have been released until 2010, so that certainly -- the incident in question is July 2017. It's certainly within [ten] years.
>
> But, also, when somebody has continued to violate our laws . . . the [c]ourt has to consider that. So, certainly, in light of that, all [of] defendant's

---

[1] <u>State v. Sands</u>, 76 N.J. 127 (1978); <u>State v. Brunson</u>, 132 N.J. 377 (1993).

> convictions will be subject to impeaching defendant if he testifies, his credibility.
>
> However, I will order that any of the convictions be sanitized because there are [other] robbery convictions . . . . So should . . . defendant take the stand, the jurors will be able to hear the indictment number, the date of the sentencing, as well as the degrees of the crimes and the sentences, but not the actual crimes for which he was convicted.

In addition, the court granted the State's motion to bar the defense from referencing the defendant's mental health because defense counsel had not provided any medical documentation or expert support for such a claim.

### B.

The State presented the following trial evidence. On July 19, 2017, at approximately 8:58 a.m., defendant entered a Newark corner store owned by mother and son, E.G. (Edna)[2] and C.G. (Carl). At that moment, Carl was approaching the store's exit with his daughter, K.G. (Kim). Defendant, holding an object wrapped in a black plastic bag simulating a gun, ordered Carl to lift up his shirt and turn over his gun, or be shot. Carl lifted his shirt, telling defendant he did not have a gun. Defendant then patted down Carl and searched his pockets, stating several times he would be shot if he moved.

---

[2] We use initials and pseudonyms to protect the victims' identity.

A-2556-19

"Hear[ing] a commotion outside," Edna came out from a back office to enter the store. She saw Kim near the front door, with defendant pressing an object wrapped in a plastic bag into Carl's side and frisking him. Defendant approached Edna, ordering her and Carl not to move. Defendant then grabbed Edna's arm, pointing the object at her side, demanding that she give him her guns. She replied there were no guns in the store.

Defendant next told Carl to hand over his cell phone. After Carl complied, defendant asked him for the phone passcode and tried to make a call. Defendant also tried to make a phone call using the store's fax machine. When Edna asked defendant why he was doing this, he responded that he wanted to call the police and that they should give him their guns. Defendant and Edna proceeded to the back office where he told her to dial several numbers, including 9-1-1, 6-1-1, and 2-1-1. She obeyed and handed defendant the phone several times, upon which he repeatedly hung up by pressing the off button. On one call, Edna stated that someone answered, "this is not [the] Newark Police Department."

Moments later, Newark Police Officer Kiyata Derrick entered the store when people–including Kim–outside the store alerted her to the ongoing situation. Seeing Carl and Edna inside the store with defendant holding an object at her side, Derrick ordered defendant to drop what she thought was a

A-2556-19

weapon. Defendant responded that he did not have one and dropped the object, revealing a plastic ginger-ale bottle wrapped in the plastic bag. Defendant followed Derrick's commands, and he was searched and arrested. At no point during the incident did defendant demand money or merchandise.

After the court advised defendant of his right to testify and the implication of his decision, defendant declined to testify. Significantly, the court reminded defendant that based on its pre-trial ruling, should he testify, the State "would be permitted to disclose to the jury details about [his] prior criminal record . . . including the degree of the convictions, as well as any sentences."

Defendant did not present any witnesses in his defense. Defense counsel argued to the jury that defendant's "bizarre and baffling behavior" was not an attempt to harm the store owners and Kim, but "a call for help," though "he went about it the wrong way."

The jury acquitted defendant of the robbery and criminal restraint offenses but found him guilty of three counts of third-degree terroristic threats and two lesser-included counts of disorderly persons simple assault.[3] The court sentenced him to concurrent five-year prison terms for two counts of terroristic

---

[3] Prior to trial, the State voluntarily dismissed one of the second-degree robbery charges.

A-2556-19

threats, with a two-and-a-half-year period of parole ineligibility; a consecutive five-year prison term for one count of terroristic threats, with a two-and-a-half-year period of parole ineligibility; and concurrent six-month prison terms for two counts of simple assault. Defendant's aggregate prison term was ten years with a five-year parole disqualifier.

Before us, defendant argues

POINT I

THE TRIAL COURT'S ERRONEOUS DECISION THAT DEFENDANT'S DECADES-OLD PRIOR CONVICTIONS WERE ADMISSIBLE FOR IMPEACHMENT REQUIRES REVERSAL.

POINT II

DEFENDANT'S SENTENCE IS EXCESSIVE BECAUSE THE COURT INCORRECTLY CONDUCTED ITS YARBOUGH[4] ANALYSIS AND ERRED IN ITS FINDING AND WEIGHING OF THE MITIGATING FACTORS.

A. THE IMPOSITION OF CONSECUTIVE SENTENCES WAS INCORRECT BECAUSE THE COURT IMPROPERLY EVALUATED THE YARBOUGH GUIDELINES.

B. THE COURT ERRED IN ITS FINDING AND WEIGHING OF THE MITIGATING FACTORS.

---

[4] State v. Yarbough, 100 N.J. 627 (1985).

A-2556-19

II.

"[T]he decision of whether a prior conviction may be admitted to impeach a witness 'rests within the sound discretion of the trial judge. . . .'" State v. Harris, 209 N.J. 431, 442 (2012) (quoting State v. Whitehead, 104 N.J. 353, 358 (1986)). An abuse of discretion occurs where "there has been a clear error of judgment." State v. Brown, 170 N.J. 138, 147 (2001) (quoting State v. Marrero, 148 N.J. 469, 484 (1997)). "[O]rdinarily evidence of prior convictions should be admitted and the burden of proof to justify exclusion rests on the defendant." Whitehead, 104 N.J. at 358 (quoting Sands, 76 N.J. at 144 (1978)). "[P]rior-conviction evidence has probative value for impeachment purposes, as assessed by the trial court. . . ." State v. T.J.M., 220 N.J. 220, 235 (2015).

That said, "N.J.R.E. 609(b)(1) creates a presumption that a conviction more remote than ten years is inadmissible for impeachment purposes, unless the State carries the burden of proving 'that its probative value outweighs its prejudicial effect.'" State v. R.J.M., 453 N.J. Super. 261, 266-67 (2018) (quoting N.J.R.E. 609(b)(1)). "[T]he court may consider"

> (i) whether there are intervening convictions for crimes or offenses, and if so, the number, nature, and seriousness of those crimes or offenses,
>
> (ii) whether the conviction involved a crime of dishonesty, lack of veracity or fraud,

(iii) how remote the conviction is in time,

(iv) the seriousness of the crime.

[N.J.R.E. 609(b)(2)(i) to (iv).]

"However, making findings as to those four factors is not enough. The court must then engage in the weighing process under (b)(1), to determine whether the State has carried its burden of proving that evidence of the remote conviction would not be more prejudicial than probative." R.J.M., 453 N.J. Super. at 270, (citing N.J.R.E. 609(b)(1)). "Thus, N.J.R.E. 609(b)(1) encompasses a more stringent admissibility standard, when more than ten years have passed since the 'conviction' . . . than N.J.R.E. 609(a), applicable when ten years or less have passed." State v. Hedgespeth, 464 N.J. Super. 421, 431 (App. Div. 2020).

Defendant claims he did not testify because the court's admission of his remote convictions committed from 1994 to 2002 was done without conducting the proper analysis under N.J.R.E. 609(b).[5] Thus, he could not support the theory argued by his counsel that his behavior was "off" because he was not trying to harm anyone but was seeking help from the police and wanted Edna

---

[5] Defendant's merits brief concedes that the 2007 second-degree convictions for aggravated arson and conspiracy to commit aggravated arson were not remote and, thus, admissible.

and Carl's guns to prevent from being harmed. Without relating his mental state to the jury, defendant asserts the court's evidentiary error prejudiced him.

Because defendant did not challenge the admission of convictions, he must show that the court's decision was "plain error clearly capable of producing an unjust result." State v. Bunch, 180 N.J. 534, 541 (2004) (quoting State v. Afanador, 151 N.J. 41, 54 (1997)); R. 2:10-2. The State concedes that admission of convictions from 1994 to 2002 was error but relying on Hedgespeth, 464 N.J. Super. at 437 (citing Rule 2:10-2), argues that the error was harmless because even if defendant had testified about the "episode" he was having, the jury would not have reached a different result due to the State's strong evidence and the inability of defendant to present any evidence of his mental health based upon the court's pre-trial ruling.

The court did not engage in an analysis under N.J.R.E. 609(b)(1) to determine if defendant's remote convictions were more probative than prejudicial. It merely determined that because defendant continually violated our laws, "all [of] defendant's convictions will be subject to impeaching [his credibility] if he testifies." We engage in that analysis.

As to factors one and four, there were four third-degree offenses involving theft, weapon possession, receipt of stolen property, and CDS with intent to

distribute, that arguably weighed against admissibility. The two second-degree offenses and one first-degree offense, involving eluding and robbery, weighed in favor of admissibility. With respect to factor two, none of the offenses involved dishonesty, lack of veracity, or fraud, thus weighing against admissibility. As to factor three, three of the offenses occurred about twenty-three years before this incident, with the remaining four offenses occurring between approximately nineteen, seventeen, fifteen, and fourteen years before this incident. This weighed against admissibility. In sum, considering the four N.J.R.E. 609(b)(2) factors, we conclude the timing and nature of the seven convictions weighed against admissibility.

We must next consider whether the State proved that the "probative value [of the remote convictions] outweigh[ed] [the] prejudicial effect" of their admission. N.J.R.E. 609 (b)(1). The State did not. The State concedes that the admission of the prior convictions was error but asserts it was harmless. As noted, the court considered only the number of defendant's offenses without addressing the prejudice of the convictions if defendant testified. The prior convictions were remote–some very much so–and were not indicative of defendant's honesty or veracity, but rather a person plagued by a past life of crime. See State v. Stevens, 115 N.J. 289, 300 (1989) ("It is thought that proof

11

of a previous crime will distract the jury, leading [it] to forego an independent analysis of the evidence and to rely merely on the tendency they possess in common with most people of saying 'once a thief – always a thief.'") (quoting State v. Ascolese, 59 N.J. Super. 393, 397 (App. Div. 1960)). We have little doubt that informing the jury about the number of defendant's convictions would have prejudiced him had he testified.

Turning to the State's claim of harmless error, its reliance on Hedgespeth is misplaced. There, we found error in the trial court's evidentiary ruling which kept the defendant from testifying, but determined no unjust result occurred where "the State's evidence was so strong . . . there was no real possibility that the jury would have reached a different result," and there was evidence corroborating the State witnesses' testimony. Hedgespeth, 464 N.J. Super. at 438. Here, the admission of defendant's convictions prompting him not to testify due to their prejudicial effect on his defense was not harmless.

The jury found defendant guilty of third-degree terroristic threats and simple assault. The former is committed where a person "threatens to commit any crime of violence with the purpose to terrorize another. . . ." N.J.S.A. 2C:12-3(a). The latter occurs when a person "[a]ttempts to cause . . . bodily injury to another" or "[a]ttempts by physical menace to put another in fear of imminent

serious bodily injury." N.J.S.A. 2C:12-1(a)(1) and -1(a)(3). The State's evidence through Carl's and Edna's testimony satisfied the elements of both offenses. The jury, however, did not hear defendant explain his intentions regarding his demands to Carl and Edna for guns and use of their phones to call the police and for emergency assistance. While the jury could have completely disregarded defendant's testimony, given the bizarre nature of his conduct, the jury may have found it illuminating and been persuaded that he did not have the mens rea to commit the crimes.

Obviously, we have no crystal ball to predict what would have happened had defendant testified. But we are convinced that the court mistakenly applied its discretion to admit defendant's remote convictions that, in turn, kept him from exercising his right to testify, and violated his due process rights and deprived him of a fair trial. U.S. Const. amends. VI, XIV; N.J. Const. art. 1, ¶¶ 1, 10; Rock v. Arkansas, 483 U.S. 44, 50 (1987) ("The necessary ingredients of the Fourteenth Amendment's guarantee that no one shall be deprived of liberty without due process of law include a right to be heard and to offer testimony. . . .") The court's ruling constituted plain error because it produced an unjust result – defendant was convicted without testifying because of the prejudicial effect of being confronted with his numerous remote convictions. See R.J.M., 453 N.J.

13

Super. at 264 ("Because defendant was unfairly prevented from testifying, and the jury might have reached a different result had defendant testified, we reverse the conviction and remand the case for retrial.").

## III.

Because we are reversing defendant's convictions, we do not address defendant's excessive sentence arguments. Finally, to the extent we have not addressed any of the parties' arguments, it is because we have concluded that they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Reversed and remanded for retrial consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

14