**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1726-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

GARY D. RHYMES,

    Defendant-Appellant.

_____

Argued March 25, 2025 – Decided May 9, 2025

Before Judges Gilson and Bishop-Thompson.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 22-04-0796.

Nadine Kronis, Assistant Deputy Public Defender, argued the cause for appellant (Jennifer N. Sellitti, Public Defender, attorney; Nadine Kronis, of counsel and on the brief).

Hannah Faye Kurt, Assistant Prosecutor, argued the cause for respondent (Theodore N. Stephens, II, Essex County Prosecutor, attorney; Hannah Faye Kurt, of counsel and on the brief).

PER CURIAM

Defendant Gary Rhymes and two co-defendants, Ricotson Dolisca and Mark Willis, were charged with robbing a man at a fast-food store. A jury convicted defendant of second-degree conspiracy to commit robbery, N.J.S.A. 2C:5-2(a)(1) and N.J.S.A. 2C:15-1(a)(1), and first-degree robbery as an accomplice, N.J.S.A. 2C:15-1(a)(1). Defendant was sentenced to twelve years in prison subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2.

Defendant appeals from his convictions and sentence. Because the trial court erred in ruling that two prior convictions could be used to impeach defendant if he testified, and because the trial court erred in instructing the jury, we reverse defendant's convictions and remand for further proceedings.

I.

On the evening of January 19, 2022, N.V. (Norm)[1] was in Irvington in a small store that sold takeout chicken. As Norm was standing in the store, three men entered the store and one of the men confronted Norm and then robbed him by taking his cellphone and wallet.

---

[1] We use initials and a fictitious name for the victim to protect his privacy interests. R. 1:38-3(c).

A-1726-23

The robbery was captured on video footage taken by a surveillance camera in the store. The video, which had no sound, was played for the jury and Norm described what the video depicted.

Norm identified himself in the video and identified two of the men involved in the incident by pointing to defendant and co-defendant Dolisca during trial. Norm explained that the man standing closest to him in the video was Dolisca, and he was wearing a black jacket and had red headphones on his head. Norm testified that he was familiar with Dolisca, and that Dolisca had texted him the day before asking for money Dolisca believed Norm owed him.

Norm identified defendant as the man wearing a red jacket in the video, and he explained that he knew defendant as "Gary," and that defendant was a friend of his brother. Norm also testified that the man wearing a green jacket as depicted in the video was involved in the incident, but Norm could not identify that man in the courtroom.

Norm described that after the three men came into the store, they asked him for money, but he told them that he did not have any money with him. The video depicts Dolisca standing in front of Norm, and he appeared to be talking to Norm for a while. Dolisca then demanded and took Norm's cellphone and wallet.

Norm then testified that Dolisca told him he had a gun, and Dolisca instructed him to take off his clothing. Norm was then asked about defendant and whether defendant had tried to ease the situation. In response, Norm stated: "Nah. No, no, no. He wasn't trying to stop nothing." After Norm took off his jacket, hoodie, pants, and sneakers, Dolisca pointed a gun at Norm and slapped him.

Thereafter, the three men left the store, Norm called his father, and then he called the police. Police officers responded to the store and searched the surrounding area. Several of the officers testified at trial.

One officer explained that he met with Norm and got a description of the three suspects, which he relayed to other officers. Another officer testified that he received the description of the three suspects and saw three men matching that description "to a tee." The three men were stopped and frisked, and a handgun was found on Dolisca. Norm was brought to a show-up identification and identified all three men as the men who had been involved in the incident at the store.

All three men were arrested and later identified as Dolisca, defendant, and Willis. After the men were in custody, they were searched, and Norm's cellphone and wallet were found on Dolisca.

4

Defendant and co-defendants Dolisca and Willis were tried together. The State's theory at trial was that defendant was an accomplice to the robbery. Through his counsel, defendant argued that he had not been involved in the robbery, and he had tried to de-escalate the situation.

Following the close of the State's case, the trial court conducted a Sands/Brunson[2] hearing on whether the State could use defendant's prior convictions if he decided to testify. The State explained that it intended to introduce evidence of two prior convictions: a 2007 conviction for third-degree possession of a controlled dangerous substance (CDS); and a 2011 conviction for third-degree aggravated assault. After hearing arguments from counsel, the court ruled that both of defendant's prior convictions would be admissible as impeachment evidence if defendant decided to testify. Thereafter, defendant elected not to testify, and he did not call any witnesses.

The trial court then charged the jury. Concerning defendant and Dolisca, the court charged the jury on first-degree robbery with a weapon. The court did not charge the jury on second-degree robbery without a weapon. In that regard,

---

[2] Trial courts hold a Sands/Brunson hearing "[w]hen deciding whether to admit a witness's prior conviction." State v. Higgs, 253 N.J. 333, 368 (2023) (first citing State v. Sands, 76 N.J. 127, 386 (1978); and then citing State v. Brunson, 132 N.J. 377 (1993)).

A-1726-23

defendant's counsel and Dolisca's counsel had previously informed the court that they were not asking for a charge on the lesser-included offense of second-degree robbery. Finally, the court charged the jury on accomplice liability for robbery.

After deliberating, the jury convicted defendant of second-degree conspiracy to commit robbery and first-degree robbery as an accomplice. The jury also convicted Dolisca of those same two crimes, as well as weapons-related offenses. The jury was unable to reach a verdict as to Willis.

Thereafter, defendant was sentenced. His conviction for second-degree conspiracy to commit robbery was merged with his conviction for first-degree robbery as an accomplice. On the conviction for first-degree robbery as an accomplice, defendant was sentenced to twelve years in prison, with periods of parole ineligibility and parole supervision as prescribed by NERA.

Defendant now appeals from his convictions and sentence.

II.

On appeal, defendant makes four arguments, which he articulates as follows:

> POINT I – THE ERRONEOUS ADMISSION OF MR. RHYMES'S REMOTE PRIOR CONVICTIONS WAS CONTRARY TO N.J.R.E. 609(b), PREVENTED MR. RHYMES FROM TESTIFYING ON HIS OWN

6

BEHALF, AND REQUIRES REVERSAL BECAUSE HIS TESTIMONY COULD HAVE IMPACTED THE OUTCOME OF HIS TRIAL.

   A.    The Sands/Brunson Hearing.

   B.    The court erred in ruling that Mr. Rhymes's 2011 conviction was admissible because probation does not constitute confinement under Rule 609(b)(1). The court also erroneously admitted his 2007 conviction based on its misunderstanding of the ten-year window established by the Rule.

   C.    Mr. Rhymes's prior convictions were inadmissible because their probative value does not outweigh their prejudicial effect.

   D.    The error that prevented Mr. Rhymes from testifying cannot be dismissed as harmless where the evidence against him was far from overwhelming.

POINT II – REVERSAL IS REQUIRED BECAUSE THE TRIAL COURT INADEQUATELY INSTRUCTED THE JURY ON ACCOMPLICE LIABILITY AND FAILED TO INSTRUCT THE JURY ON SECOND-DEGREE ROBBERY AS A LESSER-INCLUDED OFFENSE.

   A.    The trial court failed to instruct the jury that it was required to find that Mr. Rhymes shared Dolisca's purpose to commit robbery with a deadly weapon to find Mr. Rhymes guilty of first-degree armed robbery.

   B.    The trial court's failure to instruct the jury on the lesser-included offense of second-degree

robbery denied Mr. Rhymes a fair trial, requiring reversal.

POINT III – THE CUMULATIVE IMPACT OF THE ERRORS DENIED MR. RHYMES A FAIR TRIAL.

POINT IV – RESENTENCING IS REQUIRED BECAUSE THE COURT FAILED TO ADDRESS ANY MITIGATING FACTORS RAISED BY DEFENSE COUNSEL, AND IMPROPERLY FOUND AGGRAVATING FACTORS THREE, SIX, AND NINE BASED ON MR. RHYMES'S LIMITED CRIMINAL HISTORY AND THE ACTIONS OF HIS CODEFENDANTS.

Having reviewed the record and law, we reverse defendant's convictions for two separate reasons. First, the trial court erred in ruling that defendant's prior convictions could be used to impeach him if he decided to testify. Second, the trial court erred in instructing the jury on the charges against defendant. Moreover, those errors were cumulative and, in combination, deprived defendant of a fair trial.

A.    The Rulings on Defendant's Prior Convictions.

N.J.R.E. 609 governs the admissibility of prior convictions for the purpose of impeaching a witness. Higgs, 253 N.J. at 367-68 (citing N.J.R.E. 609). Under that Rule, "there are different standards for admissibility of a prior criminal conviction for impeachment purposes, depending on whether 'more than ten years have passed' since the defendant's conviction 'or release from confinement

8

for it, whichever is later.'" State v. Hedgespeth, 464 N.J. Super. 421, 430-31 (App. Div. 2020) (quoting State v. R.J.M., 453 N.J. Super. 261, 263-64, 267 (App. Div. 2018) (quoting N.J.R.E. 609(b)(1))). Under N.J.R.E. 609(a), a defendant's "prior criminal conviction is admissible for impeachment purposes, unless the defense establishes, pursuant to N.J.R.E. 403, that its admission will be substantially more prejudicial than probative." Id. at 431 (quoting R.J.M., 453 N.J. Super. at 266-67 (quoting N.J.R.E. 609(b)(1))).

If, however, more than ten years have passed, then N.J.R.E. 609(b)(1) "creates a presumption that a conviction . . . is inadmissible for impeachment purposes, unless the State carries the burden of proving 'that its probative value outweighs its prejudicial effect.'" Ibid. (quoting R.J.M., 453 N.J. Super. at 266-67 (quoting N.J.R.E. 609(b)(1))). In that regard, N.J.R.E. 609(b)(1) states:

> If, on the date the trial begins, more than ten years have passed since the witness' conviction for a crime or release from confinement for it, whichever is later, then evidence of the conviction is admissible only if the court determines that its probative value outweighs its prejudicial effect, with the proponent of that evidence having the burden of proof.

In making the admissibility determination under N.J.R.E. 609(b), courts can consider (1) "whether there are intervening convictions for crimes or offenses, and if so, the number, nature, and seriousness of those crimes or

offenses," (2) "whether the conviction involved a crime of dishonesty, lack of veracity or fraud," (3) "how remote the conviction is in time," and (4) "the seriousness of the crime." R.J.M., 453 N.J. Super. at 269 (quoting N.J.R.E. 609(b)(2)). "The court must then engage in the weighing process under [N.J.R.E. 609(b)(1)], to determine whether the State has carried its burden of proving that evidence of the remote conviction would not be more prejudicial than probative." Hedgespeth, 464 N.J. Super. at 431 (quoting R.J.M., 453 N.J. Super. at 270). In short, N.J.R.E. 609(b) sets a stringent admissibility standard. Ibid.

The ten-year period is measured from the date of defendant's prior conviction or release from confinement, whichever is later, and the beginning of the trial in which the State seeks to use the prior conviction. See N.J.R.E. 609(b)(1). We have held that confinement does not include probation for purposes of measuring the ten years under N.J.R.E. 609(b). Hedgespeth, 464 N.J. Super. at 436. See also R.J.M., 453 N.J. Super. at 269 (explaining that "'confined' clearly refers to the custodial portion of a defendant's criminal sentence, and is not a more general reference to any deprivation of physical liberty").

We have also held that a violation of probation that does not result in a State prison sentence is not the equivalent of a conviction and is not admissible to impeach a defendant's credibility. State v. Jenkins, 299 N.J. Super. 61, 71-75 (App. Div. 1997) (holding that violations of probation may not be used to impeach a defendant's credibility); see also State v. Murphy, 412 N.J. Super. 553, 565 n.1 (App. Div. 2010) (holding that the violation of probation did not constitute an intervening conviction for impeachment purposes).

Appellate courts use an abuse of discretion standard in reviewing a trial court's admission of a prior conviction. Higgs, 253 N.J. at 367; State v. Hedgespeth, 249 N.J. 234, 250 (2021). Nevertheless, "we do not defer to a ruling that is based on a mistaken interpretation of an evidence rule, or that misapplies the rule." Hedgespeth, 464 N.J. Super. at 430 (quoting R.J.M., 453 N.J. Super. at 266).

During defendant's trial, the trial court conducted a Sands/Brunson hearing on whether defendant's prior committal convictions would be admitted if he elected to testify. As already noted, the State sought to introduce two prior convictions: a 2007 conviction for third-degree possession of CDS; and a 2011 conviction for third-degree aggravated assault.

Concerning the 2011 conviction, the trial court reasoned that defendant received probation for four years, that defendant had violated probation in 2015, and that probation was extended to 2017. The court then held that the 2011 conviction was admissible, reasoning that only six years had passed since the end of probation; that is, from 2017 to 2022. In making that ruling, the trial court used the date of the incident in 2022, instead of the date of the beginning of defendant's criminal trial in October 2023.

Concerning the 2007 conviction, the trial court reasoned that the conviction was close in time to the 2011 conviction and the subsequent violation of probation in 2015. Thus, the trial court stated that "there was not a significant gap in time between the 2007 and 2011 conviction[s] and the violation of probation in 2015." The trial court then held that defendant's 2007 conviction could also be used to impeach his credibility.

Both the trial court's rulings on defendant's prior convictions were errors. In 2011, defendant was convicted of third-degree aggravated assault and sentenced to probation, as well as time already served. For his subsequent violation of probation, defendant's probation was extended. Therefore, for purposes of calculating the time under N.J.R.E. 609(b)(1), the 2011 date was the governing date because that was the date of his conviction, and following his

12

sentence defendant was not incarcerated. Accordingly, approximately twelve years had passed by the time defendant's trial began in October 2023.

The trial court also erred in admitting defendant's roughly sixteen-year-old 2007 conviction. The trial court mistakenly reasoned that the ten-year window applied to the 2007 conviction by looking to the time between that conviction and his 2011 conviction. That reasoning was a misreading of N.J.R.E. 609(b)(1).

N.J.R.E. 609(b)(1) only permits the admission of convictions older than ten years if the State meets its burden of demonstrating that the probative value of the conviction outweighs its prejudicial effect. In this matter, the trial court never weighed the probative value of either conviction. Moreover, the State failed to carry its burden of proving that either of the remote convictions would be more probative than prejudicial. There were no intervening convictions for crimes or offenses, because a violation of probation is not the equivalent of a conviction. N.J.R.E. 609(b)(2)(i). See Murphy, 412 N.J. Super. at 565 n.1; Jenkins, 299 N.J. Super. at 71. The possession of CDS and the aggravated assault were not crimes of dishonesty, lack of veracity, or fraud. N.J.R.E. 609(b)(2)(ii). The convictions were also twelve and sixteen years prior to the

13

beginning of defendant's trial. N.J.R.E. 609(b)(2)(iii). Finally, neither of the third-degree crimes were serious in nature. N.J.R.E. 609(b)(2)(iv).

We also hold that the rulings on the admission of the prior convictions were not harmless errors. An essential part of defendant's defense was that he tried to de-escalate the situation. There was no evidence that defendant took anything from Norm. There was also no evidence that defendant ever touched or used physical force against Norm. Indeed, on cross-examination, Norm testified that "the only person that pushed me was [Dolisca]," and that only Dolisca had hit him. Given that the video did not include sound, defendant's testimony could have been critical to his defense. While Norm had denied that defendant tried to de-escalate the situation, a jury might well have been persuaded if defendant elected to testify. Defendant's decision not to testify, however, was affected by the knowledge that two prior criminal convictions could be used to impeach him.

Given those facts, the rulings on the admission of the two prior convictions were not harmless. See R. 2:10-2. In that regard, the New Jersey Supreme Court has explained that "[e]xclusion of testimony, . . . which is central to a defendant's claim or defense, 'if otherwise admissible, cannot be held to be

14                                                                    A-1726-23

harmless error.'" State v. Scott, 229 N.J. 469, 486 (2017) (quoting State v. Kelly, 97 N.J. 178, 202-03 (1984)).

B.    The Jury Instructions.

"Appropriate and proper jury instructions are essential for a fair trial." State v. A.L.A., 251 N.J. 580, 591 (2022).  A jury charge must "'correctly state the applicable law, outline the jury's function and be clear in how the jury should apply the legal principles charged to the facts of the case at hand.'"  Ibid. (quoting Est. of Kotsovska v. Liebman, 221 N.J. 568, 591 (2015)).  Moreover, jury charges should be tailored to the specific facts of the case.  See State v. Savage, 172 N.J. 374, 389 (2002) (noting that New Jersey courts "regularly have noted the importance of tailoring the jury charge to the facts of the case").

Appellate courts "review for plain error the trial court's obligation to sua sponte deliver a jury instruction when a defendant does not request it and fails to object at trial to its omission." State v. Alexander, 233 N.J. 132, 141-42 (2018) (citing State v. Cole, 229 N.J. 430, 455 (2017)).  "To warrant reversal, the unchallenged error must have been 'clearly capable of producing an unjust result.'" Id. at 142 (quoting R. 2:10-2). "The mere possibility of an unjust result is not enough." State v. Funderburg, 225 N.J. 66, 79 (2016).  Instead, "[t]he possibility must be real, one sufficient to raise a reasonable doubt as to whether

the error led the jury to a result it otherwise might not have reached." Alexander, 233 N.J. at 142 (alteration in original) (quoting State v. Macon, 57 N.J. 325, 336 (1971)).

Defendant contends that the trial court made two errors in instructing the jury. First, defendant asserts that the trial court did not adequately explain to the jury that to find him guilty of robbery as an accomplice, the jury had to find that defendant shared Dolisca's intent to commit the robbery with a gun. Second, defendant argues that the trial court failed to instruct the jury on the lesser-included charge of second-degree robbery.

1.      The Instructions on First-Degree Armed Robbery as an Accomplice.

To convict defendant of first-degree robbery as an accomplice, the jury had to find that defendant shared Dolisca's purpose in committing the robbery with "a deadly weapon," here, a gun. See N.J.S.A. 2C:15-1(b) (stating that robbery "is a crime of the second degree, except that it is a crime of the first degree if in the course of committing the theft[,] the actor . . . is armed with, or uses . . . a deadly weapon").

A person is guilty of the offense as an accomplice if he, or she, "[w]ith the purpose of promoting or facilitating" the commission of the offense: "(a) [s]olicits such other person to commit it; (b) [a]ids or agrees or attempts to aid

16

such other person in planning or committing it; or (c) [h]aving a legal duty to prevent the commission of the offense, fails to make proper effort so to do." N.J.S.A. 2C:2-6(c)(1)(a), (b), (c). "When a prosecution is based on the theory that a defendant acted as an accomplice, the trial court is required to provide the jury with understandable instructions regarding accomplice liability." Savage, 172 N.J. at 388. The New Jersey Supreme Court has held that when a defendant is charged with first-degree armed robbery as an accomplice, the accomplice liability jury instruction must "clearly require the jury to find that defendant had shared the [principal's] purpose to commit a robbery with a weapon." State v. Weeks, 107 N.J. 396, 405 (1987) (citation reformatted).

In this case, the trial court instructed the jury in accordance with the model charge on accomplice liability. The trial court did not, however, expressly tell the jury that they had to find that defendant shared Dolisca's purpose to commit the robbery using a gun. While the trial court referred to its instructions on first-degree robbery, it never expressly told the jury that defendant had to know that Dolisca was going to commit the robbery with a gun. In short, the trial court's accomplice liability charge was not specifically tailored to the facts of the case.

Given the evidence presented in this case, we hold that the omission was plain error. See State v. Tucker, 280 N.J. Super. 149, 152-53 (App. Div. 1995)

(reversing defendant's robbery conviction where the trial court inadequately instructed the jury on accomplice liability by failing to explain possible differences in intent between the principal and the defendant, and to explain that defendant should be acquitted if he did not share the principal's intent to commit an armed robbery).

2. The Failure to Instruct the Jury on the Lesser-Included Offense of Second-Degree Robbery.

"A trial court's decision to charge on a lesser-included offense is governed by N.J.S.A. 2C:1-8(e)." Alexander, 233 N.J. at 142. Under N.J.S.A. 2C:1-8(e), the trial court should instruct the jury on "an included offense [if] there is a rational basis for a verdict convicting the defendant of the included offense."

In the absence of a request or an objection, the unrequested charge must be "clearly indicated" from the evidence. Alexander, 233 N.J. at 143. In that regard, the New Jersey Supreme Court has explained that the "primary obligation" of trial courts is to "see that justice is done." State v. Garron, 177 N.J. 147, 180 (2003). "That obligation includes ensuring 'that a jury is instructed properly on the law and on all clearly indicated lesser-included offenses, even if at odds with the strategic decision of counsel.'" Alexander, 233 N.J. at 143 (quoting Garron, 177 N.J. at 180). Accordingly, "trial courts have an independent duty to sua sponte charge on a lesser-included offense 'only where

the facts and evidence "clearly indicate" the appropriateness of that charge.'" Ibid. (quoting Savage, 172 N.J. at 397 (quoting State v. Choice, 98 N.J. 295, 298 (1985))).

In this case, the trial court should have charged the jury on second-degree robbery as a lesser-included offense concerning defendant. There was no evidence that defendant possessed any weapon. There was also no direct evidence that defendant knew Dolisca possessed a gun. In that regard, the video played for the jury shows that Dolisca pulled out the gun only after he had been in the store for a period of time. Prior to that time, the gun had been concealed under the jacket that Dolisca was wearing. The lack of any direct evidence that defendant knew that Dolisca was armed clearly indicated that a jury might, if given the option, have convicted defendant of the lesser-included offense of accomplice to an unarmed robbery.

We recognize that at trial, defendant's counsel did not request a lesser-included charge on the first-degree robbery charge. Indeed, defendant's counsel stated that he did not think a second-degree charge should be given. That statement, however, was made in response to a question posed to both defendant's counsel and Dolisca's counsel. The trial court was clearly focused more on Dolisca because it went on to explain that the video showed that Dolisca

19

had pulled out a weapon and pointed it at Norm.  A full analysis of the evidence, however, should have indicated that defendant was in a different position than Dolisca and that the jury should have been charged with the second-degree lesser-included offense as to defendant.

C.    The Cumulative Impact of the Errors.

"Even if an individual error does not require reversal, the cumulative effect of a series of errors can cast doubt on a verdict and call for a new trial." State v. Sanchez-Medina, 231 N.J. 452, 469 (2018).  Therefore, if there is a strong probability that defendant did not receive a fair trial, or if a combination of errors casts sufficient doubt on a verdict, then the verdict should be reversed. See State v. Burney, 255 N.J. 1, 29 (2023) (explaining that "the predicate for relief for cumulative error must be that the probable effect of the cumulative error was to render the underlying trial unfair" (quoting State v. Wakefield, 190 N.J. 397, 538 (2007))); State v. Jenewicz, 193 N.J. 440, 473 (2008) (stating that when the "cumulative effect" of a combination of errors "cast[s] sufficient doubt on a verdict," reversal is required).

The errors in allowing the State to use defendant's prior convictions if he testified were sufficient on their own to warrant reversal.  Those errors had a

direct effect on defendant's decision not to testify and his testimony may well have been important evidence in support of his defense.

The errors concerning the jury instructions are closer calls because defendant's counsel did not object to the accomplice liability charge and he expressly stated that he was not requesting a lesser-included charge on the first-degree robbery charge. Nevertheless, those errors in combination are sufficient to raise a strong doubt about the fairness of defendant's trial. Consequently, the cumulative effect of the errors demonstrates that defendant should receive a new trial.

III.

We, therefore, reverse defendant's convictions and vacate the judgment of conviction. Given that holding, we need not address the sentencing issues. This matter is remanded for a new trial or further proceedings.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

21