991 A.2d 872 (2010)
412 N.J. Super. 553
STATE of New Jersey, Plaintiff-Respondent,
v.
Karl Lester MURPHY, Defendant-Appellant.
No. A-3693-08T4
Superior Court of New Jersey, Appellate Division.
Submitted March 22, 2010.
Decided April 22, 2010.
*874 Yvonne Smith Segars, Public Defender, attorney for appellant (Stephen A. Caruso, Assistant Deputy Public Defender, of counsel and on the brief).
Luis A. Valentin, Monmouth County Prosecutor, attorney for respondent (Mary R. Juliano, Assistant Prosecutor, of counsel and on the brief; Ian D. Brater, on the brief).
Before Judges LISA, BAXTER and ALVAREZ.
The opinion of the court was delivered by
BAXTER, J.A.D.
This appeal requires us to decide whether the trial judge's rulings, authorizing the State to use a seventeen-year-old prior conviction to impeach defendant's credibility and permitting the prosecutor to argue that a testifying police officer had no incentive to lie, deprived defendant of his right to a fair trial. We agree with defendant's contention that the prosecutor's summation exceeded the boundaries of legitimate advocacy when she vouched for the credibility of her witness. *875 We likewise agree with defendant's claim that because he had no intervening convictions, this seventeen-year-old conviction was so stale that its probative value was vastly outweighed by its prejudicial effect, and the judge therefore erred by permitting the State to use it to impeach his credibility. In this trial, where the State's proofs were far from overwhelming, we decline to consider these errors harmless. Consequently, we reverse defendant's conviction for third-degree possession of a controlled dangerous substance (CDS), N.J.S.A. 2C:35-10, and remand for a new trial.

I.
On the afternoon of August 1, 2007, Asbury Park police officers Gabriel Carrasquillo and Stephen Love were conducting a surveillance operation near the Asbury Park train station in response to citizen complaints of narcotics activity at that location. Both were dressed in black pants and in black shirts with the word "Police" emblazoned in large yellow letters on the front and back. Both wore police badges hanging from their necks.
While conducting their surveillance at the train station, Carrasquillo and Love observed a man, later identified as Douglas Crimi, flag down a man who was riding a bicycle. The man on the bicycle, later identified as defendant, stopped just long enough for Crimi to hand him some currency, after which defendant immediately rode away. Police did not observe defendant hand anything to Crimi in exchange for the currency.
Carrasquillo and Love continued to observe Crimi for another twenty minutes, while he continually looked left and right on the train platform as though waiting for someone to return. Believing such conduct to be suspicious in light of what they had already observed, the two officers approached Crimi.
While Love was speaking to Crimi, Carrasquillo observed defendant pedaling toward them. Carrasquillo testified that as defendant got closer, he approached defendant and identified himself as a police officer. As he did so, based upon his experience and training, Carrasquillo specifically focused his attention on defendant's hands. While only three to four feet away from defendant, Carrasquillo observed defendant open his right hand and drop an item to the ground. Carrasquillo retrieved the item, which was later analyzed and found to be cocaine.
Defendant testified and gave a vastly different account of what had transpired. Defendant explained that he knew Crimi and the two had combined their money so that defendant could ride over to a nearby liquor store and purchase some beer for the two to share. After purchasing two cans of beer, defendant rode back to the train station; however, before he reached the spot where Crimi had been standing, he saw that Crimi was surrounded by two police officers. Fearing that he would be arrested for being in possession of an open container of beer, defendant hid the beer on the side of the train station and then resumed pedaling toward Crimi and the two officers because he "just was trying to see what was going on."
Defendant denied being in possession of cocaine. Indeed, defendant testified that he was already 100 feet past the point where the officers were speaking with Crimi when Carrasquillo yelled "hey you" and instructed defendant to come back. Defendant complied, at which time Love began to search him. According to defendant, while he was being searched by Love, Carrasquillo was pacing back and forth over a twenty-foot area looking on the ground. Defendant maintained that after ten to fifteen minutes, Carrasquillo *876 showed defendant crack cocaine and told defendant that it was his.
In his summation, defense counsel argued to the jury that Carrasquillo's testimony was "totally incredible" because no person who had cocaine in his possession would ride his bicycle toward two men with badges around their necks and the word "Police" written in large yellow letters on the front and back of their shirts. Defense counsel also forcefully argued to the jury that nobody would do what Carrasquillo described: within four feet of a police officer, stare him in the eye and then drop cocaine to the ground. He argued:
I'm sorry, it doesn't make sense. I think the officer's credibility is seriously in question. His actions belie some of the words that came out of his mouth during his testimony yesterday.
In her summation, the prosecutor responded to those arguments by stating:
I would submit all of [defendant's] discussion about the beer just goes to show how unbelievable anything he had to say was. He was saying whatever he needed to do to justify the reason why he got money from Mr. Crimi. And it doesn't make any sense. And I would submit to you, when you have to judge the credibility of the people involved here, use that to discount everything that [defendant] said. Officer Carrasquillo is an Asbury Park police officer who has no outcomeor no stake in the outcome of this proceeding, whereas the defendant clearly does.
[Emphasis added.]
Defendant objected to the prosecutor's comment that Carrasquillo had "no stake in the outcome of this proceeding." The judge overruled defendant's objection, explaining in open court, "that's fair comment in summation. When we talk about credibility, we talk about motivations, bias.... I think it's fair comment, I'll permit it."
On appeal, defendant raises the following claims:
I. THE PROSECUTOR'S IMPROPER CONDUCT AND REMARKS DENIED THE DEFENDANT A FAIR TRIAL. U.S. CONST. AMEND. XIV; N.J. CONST. (1947), ART. I, PAR. 10.
II. THE TRIAL COURT ABUSED ITS DISCRETION BY PERMITTING THE INTRODUCTION OF THE DEFENDANT'S REMOTE CONVICTION.

II.
In Point I, defendant maintains that the prosecutor's remarks in summation were improper and denied him a fair trial. Relying on the Court's opinion in State v. R.B., 183 N.J. 308, 331-32, 873 A.2d 511 (2005), he maintains that the prosecutor's argument that Carrasquillo had "no stake in the outcome of the proceedings" is an instance of prosecutorial misconduct entitling him to a new trial.
In R.B., the prosecutor argued that "'Detective Hadfield has no reason to lie.... [H]e was only assigned to that unit for two months. He's not going to, two months into the job, fabricate a partial confession from somebody. I guess the implication is he's going to score points by falsely accusing somebody[.]'" Id. at 331, 873 A.2d 511. The Court held that it is improper for a prosecutor to "contend in summation that the police had no motive to lie." Id. at 332, 873 A.2d 511.
Although the Court concluded that the prosecutor's remarks in R.B. exceeded the acceptable limits of advocacy by a prosecutor, ibid., the Court did not reverse the defendant's conviction. Id. at 333-34, 873 A.2d 511. The Court reasoned that because *877 the judge had directed the jury to disregard the offending remark, and the record demonstrated that, "on the whole," the defendant's trial and conviction were fair, a new trial was not required. Id. at 334, 873 A.2d 511.
The prosecutor's remark here is of the same nature as the remarks the Court deemed improper in R.B. As in R.B., the prosecutor argued that the police officer had nothing to gain by being untruthful. However, as R.B. teaches, a conviction will not be reversed solely because the prosecutor's remarks in summation were improper. Ibid. Instead, we must evaluate the prosecutor's comments in the context of the overall "`tenor of the trial'" and "`degree of responsiveness of both counsel and the court to improprieties when they occurred'" in determining whether an improper comment denied defendant a fair trial and warrants reversal. Id. at 332-33, 873 A.2d 511 (quoting State v. Frost, 158 N.J. 76, 83, 727 A.2d 1 (1999)). The Court devised a three-part test:
Specifically, an appellate court must consider (1) whether defense counsel made timely and proper objections to the improper remarks; (2) whether the remarks were withdrawn promptly; and (3) whether the court ordered the remarks stricken from the record and instructed the jury to disregard them. Generally, if no objection was made to the improper remarks, the remarks will not be deemed prejudicial. The failure to object suggests that defense counsel did not believe the remarks were prejudicial at the time they were made. The failure to object also deprives the court of an opportunity to take curative action. [Id. at 333, 873 A.2d 511. (quoting Frost, supra, 158 N.J. at 83-84, 727 A.2d 1).]
Here, defense counsel did object, but the judge overruled the objection by saying in open court, in full hearing of the jury, that the prosecutor's remark was a "fair comment" on the evidence. Thus, not only did the judge err by failing to strike the offending remark, he compounded the harmful effect of the remark by essentially signaling to the jury his agreement with the prosecutor's argument. The judge's comment had the effect of encouraging the jury to utilize the prosecutor's remark in its overall evaluation of whether it was defendant or Carrasquillo who was telling the truth.
The State urges us to treat the error as harmless because the judge instructed the jury that the arguments of counsel were not binding upon them and that their determination of defendant's guilt or innocence was to be based solely on the evidence. This argument is unpersuasive because, by overruling the objection and commenting that the prosecutor's remark was "a fair comment," the judge expressly permitted the jury to consider the offending remark. Thus, when the prosecutor's improper remark that Carrasquillo should be believed because he had no incentive to lie is considered in conjunction with the judge's endorsement of the remark, we can have no confidence that the jury's guilty verdict was based solely on the evidence, which is the hallmark of a fair trial. See State v. Nelson, 173 N.J. 417, 460, 803 A.2d 1 (2002).
Moreover, as in State v. Frost, supra, 158 N.J. at 87, 727 A.2d 1, "[c]redibility was the critical issue in the case," and the "State's entire case rested on the testimony of the officer[ ]. When a jury must choose which of two opposing versions to credit, it simply cannot be said that the evidence is overwhelming." Thus, when "the jury's determination hinged completely on whether the jurors believed the officer['s] testimony or [defendant's] testimony," *878 a prosecutor's remark that exceeds the bounds of legitimate advocacy can never be deemed harmless. Ibid.
Such is the case here, where the trial pitted Carrasquillo's credibility against that of defendant. No narcotics were found on defendant, the officers did not observe defendant hand anything to Crimi, the State did not present Crimi's testimony, and defendant offered a plausible explanation for his conduct and for his presence at the scene. Under those circumstances, the prosecutor's remark had a clear capacity to unfairly tilt the outcome in favor of the State.
The State also argues that we should deem the prosecutor's argument harmless as it was "far more neutral than those criticized in other cases." In particular, the State maintains that the prosecutor's "no stake in the outcome" remark was less egregious than the arguments that led to the reversal in Frost, supra, 158 N.J. at 85-86, 727 A.2d 1 (police officers would not lie because of the "`magnitude' of charges" that could be brought against them), State v. Staples, 263 N.J.Super. 602, 605, 623 A.2d 791 (App.Div.1993) (police officer with twenty-year career "would not put his career and everything that comes with that on the line by coming in here and testifying falsely"), and State v. West, 145 N.J.Super. 226, 233, 367 A.2d 453 (App. Div.1976) (the police officer's career "would be finished in a minute" if he lied), certif. denied, 73 N.J. 67, 372 A.2d 332 (1977).
While we agree with the State that the prosecutor's remark here that the police officer had no incentive to lie is less egregious than the comments in Frost, Staples and West that the officers would be fired if they lied, such distinction is of no moment. The remarks in question are of the very same character as those the Supreme Court subsequently deemed improper in R.B. Therefore, the State's effort to minimize the harmful effect of the prosecutor's remarks by comparing them to those in Frost, Staples and West is unpersuasive.
The State also points to State v. Rivera, 253 N.J.Super. 598, 605-06, 602 A.2d 775 (App.Div.), certif. denied, 130 N.J. 12, 611 A.2d 650 (1992), in which we declined to find improper the prosecutor's statement to the jury "`what does [the officer] have to gain ... from telling you that he bought this cocaine from [the defendant]?'" While we agree that the prosecutor's remark here was virtually identical to the remark we declined to find improper in Rivera, our holding in Rivera cannot survive the Court's ruling in R.B. that prosecutors are no longer permitted to "contend in summation that the police had no motive to lie." R.B. supra, 183 N.J. at 332, 873 A.2d 511. For that reason, the State's reliance on Rivera is likewise unavailing. We thus cannot view the prosecutor's offending remark as harmless, and accept the argument defendant advances in Point I.
The harmful effect of this error is compounded by the judge's improper admission of testimony concerning defendant's prior conviction seventeen years earlier, which was unfairly used to impeach defendant's credibility. We now turn to discussion of that issue.

III.
In Point II, defendant maintains that the judge committed reversible error when he permitted the State to impeach his credibility with a conviction so stale that its probative value was significantly outweighed by its prejudicial effect. At a hearing outside the presence of the jury, the judge ruled that the State would be permitted, pursuant to State v. Sands, 76 N.J. 127, 144, 386 A.2d 378 (1978), to impeach *879 defendant's credibility, if he took the stand, with his 1990 conviction for possession of CDS with intent to distribute. However, because of the similarity of the 1990 conviction to the charge for which defendant was on trial, the judge ordered the conviction sanitized, and limited the State to eliciting the fact of the conviction, the degree of the crime and the date of the conviction. See State v. Brunson, 132 N.J. 377, 390-91, 625 A.2d 1085 (1993).
In Sands, the Court articulated the standards a trial judge should apply when deciding whether a prior conviction may be admitted to impeach a defendant's credibility if he takes the stand and testifies. Sands, supra, 76 N.J. at 144, 386 A.2d 378. The Court held that whether a prior conviction may be used to impeach the credibility of a testifying criminal defendant "rests within the sound discretion of the trial judge," whose discretion "is a broad one." Ibid. Such discretion should be guided by the following criteria:
The key to exclusion is remoteness. Remoteness cannot ordinarily be determined by the passage of time alone. The nature of the convictions will probably be a significant factor. Serious crimes, including those involving lack of veracity, dishonesty or fraud, should be considered as having a weightier effect than, for example, a conviction of death by reckless driving. In other words, a lapse of the same time period might justify exclusion of evidence of one conviction, and not another. The trial court must balance the lapse of time and the nature of the crime to determine whether the relevance with respect to credibility outweighs the prejudicial effect to the defendant. Moreover, it is appropriate for the trial court in exercising its discretion to consider intervening convictions between the past conviction and the crime for which the defendant is being tried.... If a person has been convicted of a series of crimes through the years, then the conviction of the earliest crime, although committed many years before, as well as intervening convictions, should be admissible.
[Id. at 144-45, 386 A.2d 378.]
After Sands was decided, the Court adopted N.J.R.E. 609, which provides:
For the purpose of affecting the credibility of any witness, the witness' conviction of a crime shall be admitted unless excluded by the judge as remote or for other causes. Such conviction may be proved by examination, production of the record thereof, or by other competent evidence.
In contrast to N.J.R.E. 609, the federal analog, Fed.R.Evid. 609(b), expressly prohibits a prosecutor from seeking to impeach a defendant's credibility with evidence of a conviction if "more than ten years has elapsed since the date of the conviction or of the release from confinement imposed for that conviction, whichever is the later date" unless the judge determines that "the probative value of the conviction ... substantially outweighs its prejudicial effect." Thus, unlike Fed. R.Evid. 609(b), Sands and N.J.R.E. 609 contain no benchmark or brightline rule to assist trial judges in making the determination of when a conviction has become so remote that its probative value for impeachment purposes is outweighed by its potential for undue prejudice.
As we have noted, the judge permitted the State to impeach defendant's credibility with his sanitized seventeen-year-old conviction for possession of CDS with intent to distribute. The only reported decision ever to have permitted a defendant to be impeached with a conviction nearly as old as this one was State v. Paige, 256 N.J.Super. 362, 371-73, 607 A.2d 164 (App. Div.), certif. denied, 130 N.J. 17, 611 A.2d *880 655 (1992), in which the State was permitted to impeach the defendant's credibility with a conviction that had occurred sixteen years earlier. However, we do not view the decision in Paige as supporting the State's argument here that the judge's decision was correct. In Paige, the sixteen-year-old conviction was for murder, thereby satisfying the "serious crimes" standard the Court established in Sands when a remote conviction is used to impeach a defendant's credibility if he testifies.
However, defendant's prior conviction for possession of CDS with intent to distribute pales in comparison to the murder conviction used for impeachment purposes in Paige. Obviously, the more serious the prior conviction, the greater its probative value. Sands, supra, 76 N.J. at 144-45, 386 A.2d 378. Defendant's prior conviction here cannot be said to be of that character, as he received only a probationary sentence at the time of his 1990 conviction.
We therefore conclude that the judge's decision permitting the State to impeach defendant's credibility with this seventeen-year-old sanitized conviction, when defendant had no intervening prior convictions, represented a mistaken exercise of the judge's discretion because the probative value was vastly outweighed by its prejudicial effect.[1]See ibid.
As we have discussed, this trial pitted defendant's credibility against Carrasquillo's. The version of events Carrasquillo described does not strike us as inherently more believable than the version defendant offered. In particular, the jury might not have been entirely persuaded by Carrasquillo's claim that defendant rode his bicycle directly toward two officers wearing shirts clearly marked "Police," and then waited until he was within four feet of them before dropping cocaine to the ground.
Defendant's account of the events had its problems too. The jury may have been somewhat skeptical of his claim that he was only pedaling toward the officers because he was "nosy" and wanted to see what was going on with Crimi and the police.
Under such circumstances, the improper admission of defendant's conviction, the probative value of which was quite slight, both because of its age and the nature of the conviction, had the clear capacity to serve as an unfair tiebreaker that handed the State a victory it might otherwise not have achieved. The mistaken exercise of the judge's discretion in permitting the State to impeach defendant's credibility with this seventeen-year-old conviction had the clear capacity to bring about an unjust result. We thus agree with the claim defendant advances in Point II.
Reversed and remanded for a new trial.
NOTES
[1] We recognize that although defendant's conviction and probationary sentence occurred in 1990, defendant was imprisoned on October 21, 1994 when he violated the terms of that probation. He apparently remained confined only briefly, as he was discharged from parole supervision on June 15, 1995. We do not view this violation of probation as an intervening conviction. See State v. Jenkins, 299 N.J.Super. 61, 71-75, 690 A.2d 643 (App.Div.1997) (holding that a violation of probation may not be used to impeach a defendant's credibility).