**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0135-19

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

DANIEL T. PARRISH,
 a/k/a DANIEL PARRISH,
BURNIS PARRISH, and
DANIEL T. PARRISE,

    Defendant-Appellant.

_____

Submitted October 7, 2021 – Decided December 2, 2021

Before Judges Alvarez and Haas.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Indictment No. 17-09-2045.

Joseph E. Krakora, Public Defender, attorney for appellant (Frank M. Gennaro, Designated Counsel, on the brief).

Cary Shill, Acting Atlantic County Prosecutor, attorney for respondent (John J. Lafferty, IV, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Tried by a jury, defendant Daniel Parrish was convicted of four counts of third-degree drug possession, N.J.S.A. 2C:35-10(a)(1) (counts one, three, five, and nine), all occurring on different dates. The substances were either heroin or a combination of heroin and fentanyl. The jury was unable to reach a verdict on the remaining charges: three counts of third-degree drug distribution, N.J.S.A. 2C:35-5(a)(1), one count of third-degree drug possession with intent to distribute, N.J.S.A. 2C:35-5(a)(1),[1] and one count of drug-induced death, N.J.S.A. 2C:35-9. On December 18, 2018, the trial judge sentenced defendant as a persistent offender, N.J.S.A. 2C:44-3(a), to four years' imprisonment with two years' parole ineligibility on count one; four years concurrent on count three; seven years with three and a half years of parole ineligibility on count five consecutive to count one and concurrent with counts three and eight; and on count nine, four years concurrent with counts one and five. Defendant appeals and we affirm.

The following circumstances were developed at trial. The Egg Harbor Township Police Department conducted controlled buys of heroin on November

---

[1] The distribution charges, including possession with intent to distribute, corresponded to the drug possession offenses.

6, 2016, and December 6, 2016. The confidential informant/purchaser was Michael Reed; the seller, defendant. The drugs were stamped with the logo "Head Games."

On December 10, 2016, Reed accompanied Joseph Robinson to buy heroin from defendant. Robinson gave Reed the money for the purchase. Reed purchased five bags of similarly stamped heroin. Each man consumed one bag; Robinson kept the other three and took them home.

About 4:00 p.m. that afternoon, Robinson sent his girlfriend a text message, which she did not see until a couple of hours later. After seeing the text, she unsuccessfully attempted to contact him. When she finished work at approximately 10:30 p.m., she drove to Robinson's home. She found him seemingly unconscious on the floor with a needle in his arm.

The emergency medical technician (EMT) who responded to Robinson's home testified at trial that Robinson showed no signs of life. Based on the rigidity of Robinson's limbs, the EMT opined he had been dead for hours. He saw empty wax folds stamped "Head Games" on the floor. The EMT described at length the symptoms and treatment of opioid overdoses. He was trained to deal with drug overdoses and had seen approximately 100 cases. However, he was not qualified as an expert.

3

On December 13, 2016, police executed a search warrant at defendant's residence. They recovered 178 bags of heroin cut with fentanyl and stamped "Head Games."

At a pretrial Sands/Brunson[2] hearing, the judge ruled that only defendant's 2006 conviction and his two 2013 convictions would be admissible if he chose to testify. The older convictions were excluded.

At trial, defendant testified that the 178 bags of heroin and fentanyl were for his and his brother's personal consumption. He categorically denied currently selling drugs. Defendant also denied "knowing" Reed, insisting he was only acquainted with him from the neighborhood and from hiring him to cut his grass in the summer. He denied seeing Reed at all on December 10, 2016, claiming that he last saw Reed in the summer. Defendant denied ever seeing or knowing Robinson.

Defendant said that when officers pulled him over the day of his arrest and told him about the search warrant, he directed them to the location where the drugs were hidden. He was then living at his mother's home and did not want her house destroyed by officers searching the premises. On the stand,

---

[2] State v. Sands, 76 N.J. 127, 144 (1978); State v. Brunson, 132 N.J. 377, 390-92 (1993).

defendant openly acknowledged being a drug addict for years and owning the 178 bags of heroin.

Defendant's testimony was confusing at times. During direct examination, while discussing his prior guilty pleas, he said he always took "responsibility" for his wrongdoing. Defendant also seemed to say that he had never sold drugs—though in context, he most likely meant he had never sold drugs to Reed. When cross-examined on the subject, however, defendant stated that he had never denied that he dealt drugs in the past. When pressed, defendant stood fast in the position that he had not sold drugs since 2013, although he may have paid Reed for lawn mowing services by giving him drugs. He again denied communicating with Reed after the summer and claimed Reed did not have his phone number.

During summation, the prosecutor made comments to which defendant now objects as prejudicial prosecutorial misconduct. They included impermissible speculation as to the police investigation. We quote the comments later in the opinion.

At sentencing, the judge discussed the impact of State v. Yarbough, 100 N.J. 627 (1985), on her decision to impose consecutive sentences. She granted the State's extended term application and sentenced defendant on count five in

the second-degree range based on his criminal history as a persistent offender. See N.J.S.A. 2C:43-7. The judge's sentencing decision is described in greater detail in the relevant portion of this decision.

On appeal, defendant raises the following issues:

POINT I

[THE EMT] PROVIDED IMPROPER LAY OPINION AS TO ISSUES WHICH REQUIRED EXPERT TESTIMONY.

POINT II

THE PROSECUTOR'S CROSS-EXAMINATION OF DEFENDANT IMPROPERLY DISCLOSED TO THE JURY THAT CONVICTIONS ADMITTED TO IMPEACH HIS CREDIBILITY WERE FOR DISTRIBUTION OF CONTROLLED DANGEROUS SUBSTANCES.

POINT III

THE PROSECUTOR'S COMMENTS DURING SUMMATION CONSTITUTED MISCONDUCT WHICH DENIED DEFENDANT A FAIR TRIAL.

POINT IV

THE AGGREGATE SENTENCE OF [ELEVEN] YEARS WITH THE MAXIMUM PAROLE DISQUALIFIER, INCLUDING BOTH AN EXTENDED TERM OF IMPRISONMENT AND A CONSECUTIVE TERM IS AN EXCESSIVE SENTENCE.

## I.

This case is unusual in that the jury could not reach a verdict as to the drug distribution charges but found defendant guilty of drug possession. We address defendant's first three points of error in tandem as they would only be relevant had defendant been convicted of the drug distribution offenses and the drug-induced death charge. Since the jury did not reach a verdict on those crimes, we only briefly address the arguments. They are not relevant in any material respect to the drug possession offenses.

The State proffered the EMT's testimony about the drug-induced death. He testified about his training and experience treating overdose victims and about Robinson's condition when he responded to the scene. He explained that Robinson's condition suggested he had been dead for "hours." Surely, this testimony did not affect the jurors' decisions regarding defendant's drug possession convictions.

Similarly, the prosecutor's unchallenged examination into defendant's past as a drug dealer—which may have been triggered by a misunderstanding of defendant's direct testimony—would have had limited effect on defendant's convictions for drug possession. The examination seemingly did not prejudice defendant—the jury could not reach a decision on the drug distribution crimes.

7

A-0135-19

The lack of prejudice is all the more striking in light of defendant's admission that he gave Reed drugs, although he insisted it was only in the summer and in payment for grass cutting services.

Defendant also contends the prosecutor made improper remarks in summation by making the following statements:

> Why are we here?  We are here, because Daniel Parrish
> is a drug dealer.  That is his business.  The Egg Harbor
> Township Police Department wouldn't have engaged in
> a week's long investigation into a hopeless drug addict
> like he claimed to be.

Defendant claims the prosecutor proceeded to misstate the law.  The prosecutor argued Reed—who gave the victim the drugs after paying defendant—was not guilty of drug-induced death because he only acted as an intermediary, not a distributor.

Defendant also asserts that the prosecutor erred during closing remarks by thrice referring to defendant's past drug dealing.  This, he contends, essentially negated the judge's sanitization of the prior convictions.

Clearly, the prosecutor improperly bolstered the State's case by stating that officers would not have investigated defendant if he was only a drug user as opposed to a drug dealer.  That remark was indisputably prejudicial.  See State v. Rivera, 437 N.J. Super. 434, 446 (App. Div. 2014).  It was a statement

8

of belief as to a defendant's guilt based on reasons not found in the evidence. A prosecutor may not speculate about a police department's motivation to investigate a citizen. That said, the comment related to drug dealing, not possession.

Even if we agreed that all the prosecutor's comments during summation were mistaken or improper, the comments are not relevant. To warrant reversal, we must find that, within context, the improper comments denied defendant a fair trial. State v. Murphy, 412 N.J. Super. 553, 560 (App. Div. 2010). Considering the record as a whole, and the unusual circumstance that the jury convicted defendant of possession but failed to reach a verdict on any distribution count, we cannot find that the misconduct so prejudiced defendant so as to deprive him of a fair trial. State v. Frost, 158 N.J. 76, 83 (1999). The misconduct is not relevant to the appealed convictions.

## II.

Appellate courts review sentencing determinations deferentially. State v. Fuentes, 217 N.J. 57, 70 (2014). The reviewing court must not substitute its judgment for that of the sentencing court. Ibid. (citing State v. O'Donnell, 117 N.J. 210, 215 (1989)). We affirm a sentence unless (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing

A-0135-19

court were not based upon competent and credible evidence in the record; or (3) "the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience." State v. Roth, 95 N.J. 334, 364–65 (1984). To facilitate appellate review, the sentencing court must "state reasons for imposing such sentence including . . . the factual basis supporting a finding of particular aggravating or mitigating factors affecting sentence[.]" R. 3:21–4(h); Fuentes, 217 N.J. at 73; see also N.J.S.A. 2C:43–2(e) (requiring sentencing court to provide statement on record of "factual basis supporting its findings of particular aggravating or mitigating factors affecting sentence.").

Because of defendant's criminal history, the judge gave great weight to aggravating factor three, the risk defendant would reoffend, and six, the extent and seriousness of his criminal history. N.J.S.A. 2C:44-1(a)(3), (6). She also gave great weight to aggravating factor nine, the need to deter, because to date no sentence has deterred defendant from committing crimes. N.J.S.A. 2C:44-1(a)(9).

The judge gave slight weight to mitigating factors one and two, that defendant's drug possession neither caused nor threatened serious harm, and that

10

defendant did not contemplate that his drug possession would cause or threaten serious harm. N.J.S.A. 2C:44-1(b)(1), (2).

The judge found the aggravating factors clearly and substantially outweighed the mitigating. The judge called defendant "the type of repetitive offender not likely to be rehabilitated and [who] should be incarcerated under a consecutive term and for the public's safety."

Pursuant to State v. Dunbar, 108 N.J. 80, 89 (1987), as modified by State v. Pierce, 188 N.J. 155 (2006), the Code's extended sentencing scheme requires application of a four-step process in order to determine whether an extended term is necessary to protect the public. Dunbar, 108 N.J. at 90-92. The judge carefully followed the analysis.

The imposition of consecutive versus concurrent terms is controlled by Yarbough. 100 N.J. at 643-44. Here, the judge carefully discussed that standard and analyzed the relevant factors before deciding consecutive terms were warranted for at least two of the four drug possession crimes, considering the lapse in time between the offenses. The sentence does not shock our conscience. See Roth, 95 N.J. at 365.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION