**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1676-22

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

BRIAN R. AUXER,

     Defendant-Appellant.

_____

Argued May 13, 2024 – Decided July 18, 2024

Before Judges Gilson and Berdote Byrne.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Indictment No. 16-08-1933.

David J. Reich, Designated Counsel, argued the cause for appellant (Jennifer Nicole Sellitti, Public Defender, attorney; David J. Reich, on the briefs).

Linda Anne Shashoua, Assistant Prosecutor, argued the cause for respondent (William E. Reynolds, Atlantic County Prosecutor, attorney; John J. Santoliquido, Assistant Prosecutor, of counsel and on the brief).

Appellant filed a pro se supplemental brief.

PER CURIAM

A jury convicted defendant Brian Auxer of second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1), and he was sentenced to eight years in prison with periods of parole ineligibility and parole supervision as prescribed by the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. Defendant appeals from his conviction. He also contends that his prior counsel provided ineffective assistance. Having reviewed all his arguments in light of the record and law, we reject them and affirm his conviction.

I.

In August 2016, when defendant was twenty-nine years old, he was charged with physically assaulting G.P. (Gloria), a then-sixty-four-year-old woman.[1] We discern the facts from the trial record. At trial, the State presented testimony from six witnesses: Gloria, Dr. Brett Greenfield, two of Gloria's neighbors, and two responding police officers. The State also introduced various exhibits, including Gloria's medical records from her treatment after the

---

[1] We use initials and a fictitious name for the victim to protect her privacy interests. See R. 1:38-3(c)(12).

assault.  Defendant elected not to testify, and he called one witness:  Linda Auxer (Linda), his mother.[2]

Gloria owned a home in Absecon.  In early 2015, she allowed Linda, who was then her coworker, to live with her.  Several weeks later, defendant lost his job and moved in with Gloria and Linda.

Gloria testified that on the evening of July 3, 2016, she and Linda returned home after shopping.  As Gloria pulled into the driveway, she saw defendant sitting on the porch with the living room windows open and the air conditioner running.  Gloria explained that defendant had previously opened the windows while the air conditioner was running.  Gloria made a comment to Linda, and Linda went to speak with defendant.

As Gloria was smoking a cigarette and calling her sister in the garage, she heard Linda and defendant arguing.  Shortly thereafter, Linda left the home to run an errand.  Several minutes later, as Gloria was walking by defendant in an area near the kitchen, defendant asked her where his mother was.  Gloria told defendant she did not know, and defendant accused Gloria of lying.  Gloria then walked upstairs, and defendant followed her.  When Gloria got to her bedroom,

---

[2]  Because Linda Auxer shares a last name with defendant, we use her first name to avoid confusion.  In doing so, we intend no disrespect.

she tried to close the door, but defendant pushed it open. Gloria testified defendant then began to yell at her and hit her several times, including hitting her repeatedly on the right side of her rib cage. Gloria wound up on the floor with a bloody nose and cuts on her face.

After defendant left her, Gloria got up and went to her next-door neighbors' house. The neighbors testified that Gloria appeared at their home bleeding profusely from cuts on her face and told them that defendant had attacked her. One of the neighbors then called 911.

Several police officers and an ambulance responded. Gloria reported the assault to the officers, and she was taken to the hospital.

The police officers then went to Gloria's house, where they found the front door locked and heard loud music being played inside the home. The officers entered the house through a rear sliding door. After announcing their presence, the officers searched the home but initially found no one. An officer then went to look in the attic and, on the way, saw defendant standing near the kitchen. Defendant was arrested.

At the hospital, Gloria was treated by Dr. Greenfield. At trial, Dr. Greenfield testified that he ordered a computed axial tomography (CAT) scan of Gloria's head because of the injuries to her face that he observed. The CAT

4

scan showed that Gloria had a broken nose.  Dr. Greenfield also testified that Gloria had a fractured rib.  Additionally, the State entered into evidence the hospital records of Gloria's treatment at the hospital, including the CAT scan.

Testifying for the defense, Linda stated that on the morning of July 3, 2016, Gloria had shown her a bruise on her chest and explained that she got the bruise by leaning on a table at work.  In rebuttal, the State recalled Dr. Greenfield, who testified that Gloria had no bruises on her chest when he later examined her at the hospital.

After hearing the testimony and considering the evidence, the jury convicted defendant of second-degree aggravated assault.  Defendant was thereafter sentenced to eight years in prison subject to NERA.

Defendant retained new counsel and has subsequently certified that he directed his counsel to appeal both his conviction and sentence.  His initial appellate counsel appealed only the sentence. We heard that appeal on January 9, 2019, at an excessive sentencing hearing.  That same day, we affirmed defendant's sentence.  State v. Auxer, No. A-4942-17 (App. Div. Jan. 9, 2019).

Approximately a year later, in January 2020, defendant, representing himself, filed papers seeking to appeal his conviction and alleging that both his trial and appellate counsel had been ineffective.  The Law Division treated that

submission as a petition for post-conviction relief (PCR). Defendant was then assigned counsel, who filed additional papers on defendant's behalf. After hearing oral argument, on June 3, 2021, the court denied defendant's presumed PCR petition without an evidentiary hearing.

Defendant appealed. On November 7, 2022, we reversed the January 3, 2021 order and permitted defendant to file a direct appeal of his conviction. State v. Auxer, No. A-3636-20 (App. Div. Nov. 7, 2022). We accepted defendant's unrebutted representation that he had directed his first appellate counsel to appeal his conviction. We, therefore, did not decide or address defendant's claims of ineffective assistance of counsel. Instead, we allowed defendant to raise his claims of ineffective assistance of counsel when he appealed his conviction.

This appeal then followed. Defendant also moved for bail pending this appeal. We granted that motion and directed the trial court to release defendant on bail while this appeal was being considered. State v. Auxer, No. A-1676-22 (App. Div. July 14, 2023).

II.

On this appeal, defendant directly appeals from his aggravated assault conviction. He also contends that he is entitled to PCR because his trial and

6

appellate counsel provided ineffective assistance. In that regard, through his counsel, defendant makes seven arguments, which he articulates as follows:

> POINT I: THE TRIAL COURT COMMITTED HARMFUL ERROR IN ALLOWING THE ADMISSION INTO EVIDENCE OF A MORE THAN [TEN]-YEAR-OLD CONVICTION IN THE ABSENCE OF ANY BASIS FOR CONCLUDING THAT THE PRESUMPTION OF INADMISSIBILITY HAD BEEN REBUTTED

> POINT II: TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO RETAIN A MEDICAL EXPERT TO ASSESS WHETHER SERIOUS BODILY INJURIES HAD BEEN INFLICTED UPON [GLORIA]

> POINT III: THE COURT COMMITTED PLAIN ERROR IN ALLOWING HEARSAY TESTIMONY THAT A CAT SCAN OF [GLORIA] INDICATED THAT SHE HAD A COMMINUTED NASAL BONE FRACTURE

> POINT IV: TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO OBJECT TO HEARSAY TESTIMONY THAT A CAT SCAN OF [GLORIA] INDICATED THAT SHE HAD A COMMINUTED NASAL BONE FRACTURE

> POINT V: TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO OBJECT TO THE ASSISTANT PROSECUTOR'S MISCONDUCT

> POINT VI: TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO MAKE SUFFICIENT USE OF AVAILABLE PEREMPTORY CHALLENGES

POINT VII: A REVERSAL IS WARRANTED IN VIEW OF THE CUMULATIVE ERRORS COMMITTED

Defendant has also filed a pro se supplemental brief in which he makes the following four arguments:

POINT I: Claim of ineffective assistance of counsel whereupon trial counsel failed to use peremptory challenges to excuse biased jurors of which violated my right to a fair and impartial trial. Appellate as well as [PCR] counsel failed to investigate Voir[] Dire issues in wake of such.

[POINT] II: Damon Tyner's continued participation as Head Prosecutor [overseeing] my case after transitioning from . . . being my presiding judge violates not only the current conflict of interest laws under N.J.S.A[.] 52:13D but also the judicial [canons], court rules, and most importantly [RPC] 1.12(a).

POINT III: Verifiable direct contributing factors to prove ineffective assistance of counsel and a perpetual pattern of gross neglect ([RPC] 1.1) by prior counsel.

POINT IV: Failure of the Atlantic County Superior [C]ourt to produce a [s]tatistically valid random cross[-]section from the community of potential jurors.

Three of defendant's eleven arguments directly challenge his conviction. We will address those arguments first. Most of defendant's other arguments raise claims of ineffective assistance of counsel, and we will address those

8                                                                    A-1676-22

contentions second. Finally, we will address defendant's contentions concerning Damon Tyner and his cumulative errors argument.

III.

Defendant contends through his counsel that the trial court committed two errors that warrant reversal of his conviction. First, he argues that the trial court erred in granting the State's motion to use a prior conviction on cross-examination if defendant elected to testify. Second, he asserts that the trial court committed plain error in allowing Dr. Greenfield to testify that the CAT scan revealed that Gloria had suffered a fracture of her nose. In his pro se brief, defendant also asserts that the jury selection process did not produce a random selection of his peers.

Appellate courts defer to trial courts' evidentiary rulings absent an abuse of discretion. State v. Garcia, 245 N.J. 412, 430 (2021); State v. Higgs, 253 N.J. 333, 367 (2023) (explaining that a trial court's admission of a defendant's prior conviction is reviewed for an abuse of discretion). We will "not substitute [our] judgment unless the evidentiary ruling is 'so wide of the mark' that it constitutes 'a clear error in judgment.'" Garcia, 245 N.J. at 430 (quoting State v. Medina, 242 N.J. 397, 412 (2020)).

When an argument was not raised with the trial court, we review the issue for plain error. See R. 2:10-2; State v. Singh, 245 N.J. 1, 13 (2021) (explaining that "[w]hen a defendant does not object to an alleged error at trial, such error is reviewed under the plain error standard"). "[A]n unchallenged error constitutes plain error if it was 'clearly capable of producing an unjust result,'" Singh, 245 N.J. at 13 (quoting R. 2:10-2), and "raise[s] 'a reasonable doubt . . . as to whether the error led the jury to a result it otherwise might not have reached,'" State v. Funderburg, 225 N.J. 66, 79 (2016) (omission in original) (quoting State v. Jenkins, 178 N.J. 347, 361 (2004)). When applying the plain error standard, courts evaluate the error "in light of the overall strength of the State's case." State v. Sanchez-Medina, 231 N.J. 452, 468 (2018) (quoting State v. Galicia, 210 N.J. 364, 388 (2012)).

1.    The Admission of Defendant's Prior Conviction.

N.J.R.E. 609 governs the admissibility of prior convictions for the purpose of impeaching a witness. If more than ten years "have passed since the conviction or the witness's release from confinement for the conviction, whichever is later, the conviction 'is admissible only if the court determines that its probative value outweighs its prejudicial effect.'" Higgs, 253 N.J. at 368 (quoting N.J.R.E. 609(b)(1)). The party seeking to introduce the conviction

must show that its probative value outweighs its prejudicial effect. Ibid. In making an admissibility determination, the trial court can consider (1) "whether there are intervening convictions for crimes or offenses, and if so, the number, nature, and seriousness of those crimes or offenses," (2) "whether the conviction involved a crime of dishonesty, lack of veracity or fraud," (3) "how remote the conviction is in time," and (4) "the seriousness of the crime." State v. R.J.M., 453 N.J. Super. 261, 269 (App. Div. 2018) (quoting N.J.R.E. 609(b)(2)). "The key to exclusion is remoteness," which "cannot ordinarily be determined by the passage of time alone." State v. Murphy, 412 N.J. Super. 553, 564 (App. Div. 2010) (quoting State v. Sands, 76 N.J. 127, 144 (1978)).

If a court erroneously rules that evidence of a defendant's prior conviction is admissible, and defendant thereafter chooses not to testify, that ruling may constitute reversible error unless the State's evidence at trial can fairly be described as "overwhelming." R.J.M., 453 N.J. Super. at 271. In R.J.M., we held that a trial court's erroneous admission of a conviction, which was from more than ten years before the defendant's trial, was reversible error because in that case, the issues at trial "hinged on the jury's evaluation of witness credibility," the "testimony of the State's witnesses was contradictory in some

respects," and security videos did not "entirely support [the State's witnesses'] version of events." Id. at 270.

In other cases, where a defendant chooses to testify and that testimony would have been inconsistent with other testimony, the erroneous admission of a prior conviction may also be grounds for reversal. See Murphy, 412 N.J. Super. at 566. In Murphy, we held that because "the probative value of [the defendant's prior conviction] was quite slight" and the other witnesses' testimony was not "inherently more believable than the version [of events] defendant offered," admission of the evidence of the prior conviction was reversible error because it "had the clear capacity to serve as an unfair tiebreaker that handed the State a victory it might otherwise not have achieved." Ibid.

At the close of the State's case in defendant's trial, the State moved for permission to use a prior conviction to impeach defendant if he elected to testify. In that regard, the State sought to admit evidence that in February 2007, defendant had been convicted of third-degree terroristic threats. The State acknowledged that the conviction should be sanitized and requested that, if defendant elected to testify, the jury should be informed that he had previously been convicted of a third-degree felony and had been sentenced to two years of probation with fifty hours of community service. The State went on to argue

that the probative value of the 2007 conviction was not outweighed by its prejudicial effect. Defense counsel responded by objecting and arguing that the prejudicial effect of allowing the 2007 conviction would be "extreme" and the conviction itself had little probative value.

The trial court analyzed the conviction under N.J.R.E. 609(b) as a prior conviction that occurred more than ten years before trial. The court then quoted the Rule, focusing on the determination of whether the 2007 conviction would have more probative value than prejudicial effect. The trial court found that the State had met its burden because the prior conviction had more probative value than prejudicial effect. While the court did not go into extensive detail in making that finding, a review of the court's reasoning demonstrates that it viewed the conviction as more probative of defendant's credibility and, therefore, not so prejudicial that it should be excluded.

Having reviewed the trial record, we discern no reversible error in the court's decision to allow the State to use the prior conviction if defendant testified. In making this ruling, we also note that the State's evidence at trial was overwhelming. Gloria explained in detail how she was assaulted. Her testimony was corroborated by the neighbors' testimonies, as well as the medical records and the testimony of Dr. Greenfield. Defendant explains the alternate

13

version of events that he would have offered, but this version is uncorroborated by any other testimony or evidence. So, even if the trial court had erred in allowing the State to use defendant's 2007 conviction, there is no demonstration that defendant's decision not to testify had the clear capacity to change the outcome of the trial.

2. The Admission of Dr. Greenfield's Testimony About the CAT Scan.

Defendant argues that the trial court erred in admitting "hearsay testimony" from Dr. Greenfield "that a CAT scan of [Gloria] indicated that she had a comminuted nasal bone fracture." In that regard, defendant asserts that the admission of Dr. Greenfield's testimony constituted plain error because Dr. Greenfield was not the doctor who actually administered the CAT scan, and he was not qualified as an expert.

Treating physicians are permitted to testify about their "observations, diagnosis and treatment" even when they are not testifying as expert witnesses. Delvecchio v. Township of Bridgewater, 224 N.J. 559, 578 (2016) (quoting Biunno, Weisberg & Zegas, Current N.J. Rules of Evidence, cmt. 4 on N.J.R.E. 701 (2015)). In that regard, our Supreme Court has explained:

> Our courts have long permitted treating physicians to offer medical testimony regarding the diagnosis and treatment of their patients, pursuant to N.J.R.E. 701. That rule authorizes a court to admit the "testimony in

the form of opinions or inferences" of a lay witness, if the testimony "(a) is rationally based on the perception of the witness and (b) will assist in understanding [the witness's] testimony or in determining a fact in issue."

[Id. at 576 (quoting N.J.R.E. 701).]

Dr. Greenfield testified that he treated Gloria when she arrived at the hospital on June 3, 2016. He then testified as to his evaluation of the tests he ordered and the course of the treatment. He was not testifying as an expert; rather, he was testifying as the treating physician. His testimony, including his testimony concerning the CAT scan, was rationally based on his perceptions as a treating physician and assisted the jury in understanding the injuries Gloria suffered. Accordingly, Dr. Greenfield's testimony met the requirements of N.J.R.E. 701, and the trial court did not abuse its discretion in allowing that testimony.

Moreover, because there was no objection at trial to Dr. Greenfield's testimony, defendant would have to show plain error to warrant a reversal of his conviction. The record simply does not support a showing of plain error.

3.    The Jury Pool.

Defendant argues in his pro se brief that the jury selection process did not produce a random sample of his peers because certain zip codes were omitted, and the result was not a "statistically valid random result." This issue was not

15

raised during the jury selection process, and, therefore, we evaluate it for plain error.

Criminal defendants are guaranteed the "right to trial by a jury drawn from a representative cross-section of the community." State v. Andujar, 247 N.J. 275, 299-300 (2021) (quoting State v. Gilmore, 103 N.J. 508, 524 (1986)). "Jury-selection processes are presumed valid[,] and a defendant challenging a jury-selection process 'must show by a preponderance of the believable evidence that the attacked process is fatally flawed.'" State v. Dangcil, 248 N.J. 114, 141 (2021) (quoting State v. Long, 204 N.J. Super. 469, 485 (Law Div. 1985)). To bring a challenge, a defendant must (1) "identify a constitutionally-cognizable group," (2) "prove substantial underrepresentation over a significant period of time," and (3) "show discriminatory purpose either by the strength of his [or her] statistical showing or by showing the use of racially non-neutral selection procedures to support the inference of discrimination raised by substantial underrepresentation." Ibid. (quoting State v. Dixon, 125 N.J. 223, 232 (1991)).

Defendant has not shown that the jury selection process was flawed. In that regard, defendant has not identified a group that was discriminated against, nor has he shown any discriminatory intent. Instead, he argues that the selection process was rushed, but he does not support that contention with any evidence.

16

Accordingly, we discern no reversible error in the jury selection process that would warrant vacating defendant's conviction.

IV.

To establish a claim of ineffective assistance of counsel, a defendant must satisfy the two-prong Strickland test: (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) "the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984); State v. Fritz, 105 N.J. 42, 58 (1987) (adopting the Strickland two-prong test in New Jersey). Under prong one, a defendant must establish that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. Under prong two, a defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

1. The Failure to Retain a Medical Expert.

Defendant asserts that his trial counsel was ineffective in failing to retain a medical expert to assess whether Gloria had serious bodily injuries. In support of that contention, defendant certified in 2020 that he requested his trial counsel to retain a medical expert to review Gloria's injuries, but trial counsel failed to

do so. Defendant argues that a medical expert may have been able to opine that Gloria's injuries "were not sufficiently severe or permanent to meet the statutory definition of serious bodily injury associated with second-degree aggravated assault," and that if such testimony had been offered, he may have been acquitted or convicted of a lesser-included offense.

When a defendant claims that his counsel was ineffective in failing to retain an expert to rebut the State's expert, the defendant must offer some showing that an "independent expert[] would have reached materially different conclusions." State v. Marshall, 148 N.J. 89, 211 (1997). Defendant speculates on the testimony a defense expert may have been able to offer, but he has not made any showing that a defense expert would have been able to opine that Gloria's injuries were less serious than what Dr. Greenfield testified about at trial. In short, defendant makes a bald contention without any factual support. Accordingly, defendant has not shown that trial counsel's failure to retain a medical expert constituted ineffective assistance of counsel.

2.    The Failure to Object to the Testimony About the CAT Scan.

Defendant also argues that his trial counsel's failure to object to Dr. Greenfield's testimony about the CAT scan constituted ineffective assistance of counsel. We have already ruled that the trial court did not err in admitting Dr.

18

Greenfield's testimony, and, therefore, defendant cannot prove either prong of the Strickland test.

3.    The Failure to Object to Remarks by the Prosecutor.

Defendant argues that the prosecutor "repeatedly brought up points [that] were transparently calculated to elicit sympathy for [Gloria] and hostility to [defendant]."  In support of that argument, defendant points to various remarks the prosecutor made in the opening statement and summation.  He then contends that his trial counsel's failure to object to those remarks constituted ineffective assistance.

Prosecutors in criminal cases are expected to make "vigorous and forceful" arguments to juries.  State v. Frost, 158 N.J. 76, 82 (1999); see also Garcia, 245 N.J. at 435.  Nevertheless, a prosecutor's opening statement to the jury "'should provide an outline or roadmap of the State's case' and 'should be limited to a general recital of what the State expects, in good faith, to prove by competent evidence.'"  State v. Land, 435 N.J. Super. 249, 269 (App. Div. 2014) (emphasis omitted) (quoting State v. Walden, 370 N.J. Super. 549, 558 (App. Div. 2004)).  Likewise, prosecutors are "obliged to confine summation remarks to the evidence in the case and only those reasonable inferences that may be

drawn from that evidence." State v. McNeil-Thomas, 238 N.J. 256, 283 (2019) (LaVecchia, J., dissenting).

Defendant now objects to the prosecutor's comments concerning (1) Gloria's decision to allow defendant and his mother to live at her home, and (2) Gloria's fear of defendant during and after the assault. A review of the prosecutor's comments in the totality of the circumstances of this case discloses neither a prima facie showing of ineffective assistance of counsel nor reversible error. The prosecutor's comments concerning Gloria allowing defendant and his mother to live at her home were a fair summary of Gloria's subsequent testimony. Therefore, those comments were permissible, and trial counsel was not ineffective in failing to object to them.

The prosecutor's comments concerning what Gloria was thinking and feeling during the assault may have been subject to objection, but they do not constitute reversible error. Considered in the full context of defendant's trial, those comments did not produce an unjust result. Accordingly, defendant has failed to show that his counsel's failure to object was prejudicial.

4.    The Failure to Use All Peremptory Challenges.

Defendant also argues that his trial counsel was ineffective in not using more peremptory challenges during the jury selection process. He contends that several of the jurors may have been sympathetic to an assault victim.

A defendant can "strike individual jurors, without giving a reason, by exercising peremptory challenges." Andujar, 247 N.J. at 284 (citing N.J.S.A. 2B:23-13(b)). "The 'goal of peremptory challenges is to secure an impartial jury.'" Hitchman v. Nagy, 382 N.J. Super. 433, 444 (App. Div. 2006) (quoting State v. DiFrisco, 137 N.J. 434, 468 (1994)). When the jury selection process "adequate[ly] . . . ensure[d] that a fair and impartial jury was empaneled," there is no showing of ineffective assistance of counsel constituting reversible error. State v. Timmendequas, 161 N.J. 515, 598-601 (1999) (rejecting defendant's ineffective assistance of counsel argument when jurors were thoroughly questioned and defense counsel did not use any peremptory challenges).

In this matter, a review of the record establishes that the trial court adequately questioned the jurors concerning their ability to be fair and impartial. All the jurors impaneled testified that they would be able to view the case impartially, and there is nothing in the record to indicate that any juror was not

21

impartial.  Thus, there has been no showing of ineffective assistance of counsel for failing to use more peremptory challenges.

V.

In his pro se brief, defendant contends that the then-Atlantic County Prosecutor Damon Tyner should have been disqualified due to a conflict of interest because Tyner had previously been a judge and had handled defendant's arraignment.

RPC 1.12(a) states, in relevant part, that "a lawyer shall not represent anyone in connection with a matter in which the lawyer participated personally and substantially as a judge . . . unless all parties to the proceedings have given consent, confirmed in writing."  RPC 1.12(b) provides that if a lawyer is disqualified by RPC 1.12(a), then "no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in the matter" unless the lawyer is timely screened, or written notice is promptly given to the parties.  In State v. Smith, 478 N.J. Super. 52 (App. Div. 2024), we held that an entire county prosecutor's office need not be disqualified so long as the prosecutor who has a conflict due to a prior representation is appropriately screened from the matter and has not shared any confidential information learned during his or her prior involvement in the case.  Id. at 64.  We expressly

22

noted that our holding applied to prior involvement by both assistant county prosecutors and the county prosecutor. Ibid.

In this matter, we discern no grounds for reversing defendant's conviction based on the prosecutor's prior service as a judge. The record discloses that while a judge, Tyner had limited involvement in defendant's case because he only presided over the arraignment. Moreover, there is no showing that Tyner had any involvement in the prosecution of defendant's case once he became county prosecutor.

VI.

Defendant also argues that "the cumulative errors committed" warrant reversal of his conviction. As we have found no error, there are no cumulative errors warranting reversal of defendant's conviction. See State v. Weaver, 219 N.J. 131, 155 (2014) (explaining that if "no error was prejudicial and the trial was fair," the theory of cumulative error does not apply).

Finally, to the extent that we have not addressed any other argument made by defendant, it is because we have concluded that those arguments lack sufficient merit to warrant discussion in a written opinion. See R. 2:11-3(e)(2).

Affirmed. This court's prior order granting bail is vacated.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

23                                                      A-1676-22